1   NOEL C. JOHNSON, ESQ. (SBN 175397)
    Office of the General Counsel
2   WASHINGTON MUTUAL BANK
    201 Mission Street, 12th Floor
3   Mail Stop CSSF112
    San Francisco, CA 94105
4   Tel:    (415) 278-4527
    Fax:    (415) 278-6012
5
    MICHAEL CAVENDISH*
6   (Florida Bar No. 0143774)
    GUNSTER, YOAKLEY & STEWART, P.A.
7   225 Water Street, Suite 1750
    Jacksonville, FL 32202-5185
8   Tel:    (904) 350-7171
    Fax:    (904) 350-5955
9   *Admitted pro hac vice

10  Attorneys for Plaintiff,
    WASHINGTON MUTUAL BANK

11

12              UNITED STATES DISTRICT COURT

13        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

14  WASHINGTON MUTUAL BANK, a federal        Case No. C 07-03055 MMC
    savings bank, as successor at law to Long
15  Beach Mortgage Company,
                                             **PLAINTIFF'S MEMORANDUM OF**
16                          Plaintiff,       **POINTS AND AUTHORITIES IN**
                                             **SUPPORT OF MOTION FOR SUMMARY**
17          v.                               **JUDGMENT**

18  UNIFIED CAPITAL GROUP, INC., a
    California corporation dba California Mortgage
19  Group, also known as California Mortgage
    Group, Inc.,
20                                           Date:   July 11, 2008
                            Defendant.       Time:   9:00 a.m.
21                                           Dept.:  7
                                             Judge:  The Honorable Maxine M. Chesney
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Title                                                                                                        Page

TABLE OF AUTHORITIES ............................................................................ iii

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF THE CASE AND FACTS ........................................ 2

III.  MEMORANDUM OF LAW ................................................................. 4

      A.    The Summary Judgment Standard .......................................... 4

IV.   THE ELEMENTS OF BREACH OF
      CONTRACT FOR THE INSTANT CASE ........................................... 5

V.    WASHINGTON MUTUAL'S ENTITLEMENT
      TO RECOVER FOR BREACH OF CONTRACT ................................ 6

VI.   THE LEGITIMACY OF WASHINGTON
      MUTUAL'S CONTRACT REMEDIES ............................................... 6

VII.  CALIFORNIA LAW REQUIRES THE
      ENFORCEMENT OF CONTRACTS ................................................. 7

VIII. WHY THE DEFENDANT'S DEFENSES ARE UNAVAILING ................ 8

      A.    Defendant's Conclusory Defenses
            Are No Bar To Summary Judgment .......................................... 8

      B.    Each Of Defendant's Affirmative
            Defenses Are Also Inapplicable ............................................... 9

            1.    Washington Mutual States A Claim For Relief .............. 9

            2.    No Proximate Cause Defense ........................................ 9

            3.    No Limitations Bar ........................................................ 9

            4.    No Laches ..................................................................... 9

            5.    No Unclean Hands ........................................................ 10

            6.    No Failure Of Conditions Precedent .............................. 10

            7.    No Failure To Mitigate .................................................. 11

            8.    No Real Party In Interest Defense .................................. 11

            9.    No Contributory Or Comparative Negligence Defense ... 12

            10.   No Third-Party Negligence Defense ............................... 12

            11.   No Third-Party Proximate Causation Defense ................ 12

1

       12.    No Failure Of Consideration ........................................................12

2             13.    No Commercial Frustration ........................................................13

3  IX.    ATTORNEY'S FEES, COSTS, AND INTEREST .........................................13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

::ODMA\PCDOCS\DOCSCAL\212459\1      **P's & A's IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

**TABLE OF AUTHORITIES**

2
Case                                                                                                          Page

3
*A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*,
         41 Cal.Rptr.2d 166 (Cal.App. 1995)......................................................8
4

*Anderson v. Liberty Lobby*,
5        477 U.S. 242 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)......................5

6
*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*,
         277 Cal.Rptr. 40 (Cal.App. 1990)........................................................12
7

*Celotex Corp. v. Catrett*,
8        477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)................4, 5, 9

9
*Chapman & Cole v. Itel Container Int'l B.V.*,
         865 F.2d 676 (5th Cir. 1989)................................................................15
10

*City of Los Angeles v. Amwest Sur. Ins. Co.*,
11       76 Cal.Rptr.2d 903 (Cal.App. 1998)....................................................14

12
*Cohen v. Murphy*,
         222 F.R.D. 416 (N.D. Cal. 2004)...........................................................9
13

*Considine Co, Inc. v. Shadle, Hunt & Hagar*,
14       232 Cal.Rptr. 250 (Cal.App. 1986)......................................................13

15
*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.*,
         108 Cal.Rptr. 2d 213 (Cal.App. 2001)...................................................9
16

*Dickson, Carlson & Campillo v. Pole*,
17       99 Cal.Rptr.2d 678 (Cal. App. 2000).....................................................11

18
*Fibreboard Paper Products Corp. v. East Bay Union of Machinists*,
         39 Cal.Rptr. 64 (Cal. 1964)....................................................................11
19

*First Commercial Mortgage Co. v. Reece*,
20       108 Cal.Rptr.2d 23 (Cal.App. 2001).......................................................6

21
*Foley v. Interactive Data Corp.*,
         765 P.2d 373 (Cal. 1988)..........................................................................8
22

*Frankel v. Board of Dental Examiners*,
23       54 Cal.Rptr.2d 128 (Cal.App. 1996)....................................................7, 8

24
*Harper v. Wallingford*,
         877 F.2d 728 (9th Cir. 1989)....................................................................5
25

*Hsu v. Oz Optics Ltd.*,
26       211 F.R.D. 615 (N.D. Cal. 2002)............................................................6

27
*Kendall-Jackson Winery, Ltd. v. Superior Court*,
         90 Cal.Rptr.2d 743 (Cal.App. 1999)....................................................11
28

-iii-

1    *Klaxon Co. v. Stentor Elec. Mfg. Co.,*
          313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)........................................5

2
     *Kransco v. American Empire Surplus Lines Ins. Co.,*
3         2 P.3d 1 (Cal. 2000)...........................................................................13

4    *Lite-On Peripherals, Inc. v. Burlington Air Express, Inc.,*
          255 F.3d 1189 (9th Cir. 2001).............................................................6
5
     *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
6         475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)..........................4, 5

7    *Mattco Forge, Inc. v. Arthur Young & Co.,*
          60 Cal.Rptr.2d 750 (Cal. 1997)..........................................................11
8
     *Meigs v. Pinkham,*
9         159 Cal. 104 (Cal. 1910)....................................................................11

10   *Navarro v. Perron,*
          19 Cal.Rptr.3d 198 (Cal.App. 2004).....................................................8
11
     *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*
12        6 Cal.3d 176 (Cal. 1971)....................................................................10

13   *North Oakland Medical Clinic v. Rogers,*
          76 Cal.Rptr.2d 743 (Cal.App. 1998)....................................................15
14
     *Orix Real Estate Capital Markets, LLC v. Superior Bank, FSB,*
15        127 F.Supp.2d 981 (N.D. Ill. 2000).......................................................7

16   *Resolution Trust Corp. v. Key Financial Services, Inc.,*
          280 F.3d 12 (1st Cir. 2002)..................................................................7
17
     *Robert F. Kennedy Medical Center v. Department of Health Services,*
18        72 Cal.Rptr. 2d 180 (Cal.App. 1998)...................................................11

19   *SEC v. Seaboard Corp.,*
          677 F.2d 1301 (9th Cir. 1982)..............................................................5
20
     *Snyder v. Enterprise Rent-A-Car Co.,*
21        392 F.Supp.2d 1116 (N.D. Cal. 2005)....................................................5

22   *U.S. Roofing, Inc. v. Credit Alliance Corp.,*
          279 Cal.Rptr. 533 (Cal.App. 1991).......................................................14
23
     *United States v. Hempfling,*
24        2007 WL 1299262 *4, Case No. CV F 05-594 LJO SMS (E.D. Cal. May 1, 2007)..........9

25   *United States v. Wilson,*
          881 F.2d 596 (9th Cir. 1989) ...............................................................9
26
     Statutes, Rules & Regulations
27
     28 U.S.C.
28        §1332.............................................................................................5

§1961(a) ..................................................................................................................13

California Civil Code
    §3287(a) ..........................................................................................................13

California Code of Civil Procedure
    §337.................................................................................................................9
    §367...............................................................................................................11

Federal Rules of Civil Procedure
    Rule 56(c) ..............................................................................................2, 6, 14

Other Authorities

5 Witkin, California Procedure (4th ed.1997),
    Pleading, § 1018, pp. 469-470 ......................................................................13

Plank, *The True Sale of Loans and the Role of Recourse,*
    14 Geo. Mason U.L. Rev. 287, 304 (Winter, 1991) ......................................7

::ODMA\PCDOCS\DOCSCAL\212459\1
                 **P's & A's IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

## NATURE OF RELIEF REQUESTED

Plaintiff Washington Mutual, pursuant to Fed. R. Civ. P. 56(c), moves for entry of summary judgment in its favor as to its Complaint for breach of contract, and against defendant Unified Capital Group, Inc. dba California Mortgage Group aka California Mortgage Group, Inc. ("Defendant") and states in support:

## MOTION FOR SUMMARY JUDGMENT
## ON BREACH OF CONTRACT CLAIM

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This motion presents a straightforward matter of breach of contract.   The essential elements of Washington Mutual's contract claim are not in dispute.

Washington Mutual purchased mortgage loans from Defendant under a written two-page Seller Contract.  *See* Exhibit A to Complaint ("Cpl.").  The Seller Contract provided, through an express provision found at Section 604 of an expressly incorporated document known as the Long Beach Mortgage Seller Guide ("Seller Guide"), that if a mortgage loan purchased by Washington Mutual suffered an "early payment default" – where the borrower fails to make the first loan payment owed – the Defendant was obligated to repurchase that loan from Washington Mutual upon demand.

This repurchase obligation is repeated and amplified by the language at Section 5(b) of the Seller Contract.  Further, the Seller Contract also provides, at Section 5(a), that Defendant is obligated to indemnify Washington Mutual for any losses it suffered arising out of any breach of the contract by Defendant or out of any breach of any representation or warranty given in the Seller Guide.

Washington Mutual purchased two (2) loans pursuant to the Seller Contract that each suffered early payment defaults.   Washington Mutual demanded in writing that Defendant repurchase both loans, and Defendant refused.

Accordingly, Washington Mutual filed suit on March 28, 2007, and now seeks summary judgment on its contract claim, because there is no dispute, legally or factually, that Defendant

1 | breached the Seller Contract when it refused to repurchase the two loans, and that Washington
2 | Mutual is entitled to its monetary remedy.

3 | II.    STATEMENT OF THE CASE AND FACTS

4 | 1.    Washington Mutual's Amended Complaint is a single-count action for breach of
5 | contract.

6 | 2.    This is a motion seeking summary judgment upon Washington Mutual's breach of
7 | contract claim against Defendant pursuant to Rule 56(c), Fed. R. Civ. P.

8 | 3.    This motion is supported by the Affidavit of Jacqueline Johnson, which affidavit
9 | is attached hereto as Exhibit A ("Johnson Aff."), and the Affidavit of William L. Lynch, which
10 | affidavit is attached hereto as Exhibit B ("Lynch Aff.").  This motion also cites to Washington
11 | Mutual's Amended Complaint and Defendant's Answer ("Ans."), copies of which are attached
12 | hereto as Exhibits C and D.

13 | 4.    Washington Mutual is a federally chartered savings association that engages in
14 | the business of servicing residential mortgage loans and is the successor-at-law to Long Beach
15 | Mortgage Company.  *See* Cpl. at p. 1; Lynch Aff. at p. 2, ¶8.

16 | 5.    Defendant is a California corporation with its principal place of business at
17 | 1723 Hamilton, Suite 200, San Jose, California 95113.  Cpl. at p. 2; Ans. pp. 1-2.

18 | 6.    On January 20, 2005 Defendant and Washington Mutual's predecessor Long
19 | Beach entered into the Seller Contract for the purchase and sale of mortgage loans, under which
20 | Defendant acted as the seller of loans and Washington Mutual acted as the buyer (the "Seller
21 | Contract").  *See* Cpl. at p. 3, ¶11, Ex. A; Johnson Aff. at p. 2, ¶7.

22 | 7.    The Seller Contract expressly incorporated by reference the Seller Guide, a
23 | document that contained representations and warranties of Defendant as to individual loans sold
24 | to Washington Mutual.  *See* Cpl. at p. 3, ¶12, Ex. A, p. 1 of 2, ¶3 (titled "Seller Guide"); Johnson
25 | Aff. at pp. 2-3, ¶8.

26 | 8.    The Seller Contract was freely assignable to the successors of Long Beach, and
27 | was assigned to and assumed by Washington Mutual as the successor-at-law to Long Beach.

28 |

::ODMA\PCDOCS\DOCSCAL\212459\1    **P's & A's IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*See* Cpl. at Ex. A, p. 2 of 2, ¶6(b) ("Buyer may assign or sell without restriction its rights under this Seller Contract […]"); Lynch Aff. at pp. 1-2, ¶¶7-8.

9.     Pursuant to the Seller Contract, Washington Mutual purchased the following two mortgage loans:

| Borrower | Washington Mutual Loan No. |
|---|---|
| Romero | 0698492956 |
| Romero | 0698493095 |

Cpl. at p. 3, ¶15; Johnson Aff. at p. 3, ¶12.

10.     The Seller Guide defines an "early payment default" at Section 604.  Cpl. at p. 3, ¶14.  An "early payment default" is defined as "…occurs when a borrower fails to remit the first monthly payment owed after closing within thirty (30) days following the payment's due date. Cpl. at p. 3, ¶14; Johnson Aff. at p. 3, ¶13, Appendix 5.

11.     The Seller Guide expressly provides that the Defendant must repurchase on demand any loan that suffers an early payment default.  Cpl. at p. 3, ¶14; Johnson Aff. at p. 3, ¶10, Appendix 2.

12.     Both loans listed at paragraph 8 suffered an early payment default after they were purchased by Washington Mutual.  *See* Cpl. at p. 3, ¶15; Johnson Aff. at p. 3, ¶13, Appendix 3.

13.     Washington Mutual gave Defendant written notice that the two loans suffered an early payment default.  *See* Cpl. at p. 4, ¶18; Johnson Aff. at p. 4, ¶¶14, 16, Appendices 4-5.

14.     Washington Mutual, in writing, demanded that Defendant repurchase the loans because they suffered an early payment default.  *See id*.

15.     Defendant refused to repurchase the loans or otherwise indemnify or pay any monies to Washington Mutual as a result of its breach of the Seller Contract.  *See* Cpl. at p. 4, ¶18; Johnson Aff. at p. 4, ¶¶15, 17.

16.     The Seller Contract and Seller Guide provide that Washington Mutual is entitled to its attorney's fees and legal expenses if it is required to enforce its rights under the Seller Contract.  Cpl p. 4, ¶21; Johnson Aff. at p. 5, ¶21.

17.    Washington Mutual is prosecuting this action through in house counsel, as well as the undersigned counsel to enforce its rights under the Seller Contract and, accordingly, it is entitled to reimbursement of its attorney's fees and legal expenses incurred in this lawsuit. Cpl. at p. 4, ¶22; Johnson Aff. at p. 5, ¶21.

18.    As set forth in the Johnson Affidavit, after Defendant refused to provide Washington Mutual with the contractually specified repurchase remedy, and in light of the borrower's default on the loans, Washington Mutual acted to mitigate and reduce its damages by accepting a short sale of the property underlying both loans, which short sale resulted in a new, reduced loss amount of $243,229.64, exclusive of attorney's fees, costs, and interest. Johnson Aff. p. 4, ¶19.

19.    This loss amount of $243,229.64 is the direct and proximate result of Defendant's refusal to repurchase the two (2) early payment default loans, combined with Washington Mutual's mitigative acts, such that Defendant is obligated pursuant to Sections 5(a) and 5(b) of the Seller Contract to make Washington Mutual whole by paying this loss.

20.    Defendant has asserted an answer denying certain allegations and admitting others, and asserting affirmative defenses, however each defense Defendant has asserted is not only conclusory and unsupported, but does not avoid the clear contractual liability the Seller Contract and Seller Guide assign to Defendant for the fact that it sold the early payment default loans identified at paragraph 8 above. Ans. pp. 4-6.

21.    As set forth in the following memorandum, there is no question of material fact before the Court but that Washington Mutual has been damaged by Defendant's breach of contract and is entitled to recover a sum certain, such that the entry of summary judgment in its favor as to the breach of contract claim asserted in the Complaint is appropriate.

III.    <u>MEMORANDUM OF LAW</u>

A.    <u>The Summary Judgment Standard</u>

The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby*, 477 U.S. 242 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

1    106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) requires that a party seeking summary judgment show the

2    absence of a genuine issues of material fact.[1]   Once the moving party has done so, the

3    nonmoving party must "go beyond the pleadings and . . . designate 'specific facts showing that

4    there is a genuine issue for trial.'"  *See Celotex*, 477 U.S. at 586; *Snyder v. Enterprise Rent-A-*

5    *Car Co.*, 392 F.Supp.2d 1116, 1121 (N.D. Cal. 2005).

6        "When the moving party has carried its burden under Rule 56(c), its opponent must do more

7    than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475

8    U.S. at 586; *Snyder*, 392 F.Supp.2d at 1121.   The non-moving party's burden to demonstrate a

9    genuine issue of material fact is not satisfied by mere disagreement or the making of bald assertions

10   that a genuine issue of fact exists.  *Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989); only

11   genuine disputes over facts that might affect the outcome of the suit under the governing law will

12   properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at

13   248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may

14   be granted." *Id. at* 249-50.

15   IV.    THE ELEMENTS OF BREACH OF CONTRACT FOR THE INSTANT CASE

16        This action proceeds under the Court's diversity jurisdiction provided by 28 U.S.C.

17   §1332.  A federal court sitting in diversity applies the substantive law of the forum state.  *Klaxon*

18   *Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  The Seller

19   Contract contains a choice-of-law clause selecting California law as governing.  *See* Exhibit A to

20   Cpl. at ¶6(c).

21        Under California law, breach of contract requires the following elements:

22            1)    The existence of a contract;

23            2)    Performance by the plaintiff;

24            3)    Breach by the defendant; and

25            4)    Damages to the plaintiff.

26

27   _____

28   [1]  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to
     resolve the parties' differing versions of the truth."  *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306
     (9th Cir. 1982).

::ODMA\PCDOCS\DOCSCAL\212459\1          **P's & A's IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  *See First Commercial Mortgage Co. v. Reece*, 108 Cal.Rptr.2d 23, 33 (Cal.App. 2001); *Hsu v.*

2  *Oz Optics Ltd.*, 211 F.R.D. 615, 619 (N.D. Cal. 2002).

3  V.    WASHINGTON MUTUAL'S ENTITLEMENT
       TO RECOVER FOR BREACH OF CONTRACT

4

5          Washington Mutual has satisfied each of the California law elements for breach of contract:

6      •    Washington Mutual has conclusively established the presence of a valid and

7             enforceable written contract – the Seller Contract.

8      •    Washington Mutual has conclusively established its own performance under that

9             contract – that it actually purchased the subject loans from Defendant.

10     •    Washington Mutual has conclusively established a breach by Defendant – the

11            purchase of loans that suffered an "early payment default" and the Defendant's

12            refusal to repurchase the loans in accordance with the Seller Contract after written

13            demand was made for the repurchase.

14     •    Washington Mutual has conclusively established a resultant injury flowing from this

15            breach – its loss on the two (2) loans at issue, after mitigation, of $243,229.64.

16         These are straightforward facts that are not in dispute. Within this jurisdiction, the entry

17  of summary judgment upon contract claims featuring established elements of fact not in dispute

18  is favored.  *See Lite-On Peripherals, Inc. v. Burlington Air Express, Inc.*, 255 F.3d 1189, 1192

19  (9th Cir. 2001) (summary judgment is appropriate in a straightforward contract case where the

20  essential elements have been established).  Pursuant to Fed. R. Civ. P. 56(c) then, Washington

21  Mutual is entitled to the entry of summary final judgment in its favor on its breach of contract

22  claim in the amount of $243,229.64, exclusive of fees, interest and costs.

23  VI.    THE LEGITIMACY OF WASHINGTON MUTUAL'S CONTRACT REMEDIES

24         The remedies that the parties agreed to in the Seller Contract are simply obligations to

25  pay money, no different from any other obligation to pay money damages.  *See Orix Real Estate*

26  *Capital Markets, LLC v. Superior Bank, FSB*, 127 F.Supp.2d 981, 983 (N.D. Ill. 2000) ("The

27  payment of the liquidation price of a loan is payment of an amount of money, which is

28  completely fungible…there is no practical difference between this…remedy and compensatory

damages."). These remedies are an essential part of the sale of mortgage loans, as they enable sellers like Defendant to find a willing marketplace and achieve consistently favorable prices on the loans they make and sell. *See* Plank, *The True Sale of Loans and the Role of Recourse*, 14 Geo. Mason U.L. Rev. 287, 304 (Winter, 1991) (observing that sellers of loans often provide buyers with credit recourse in the form of repurchase agreements and warranties against loan defects in order to ensure a market for the seller's loan products and maximize the sales price they can achieve for their loans).

The remedies the parties agreed to also represent a conscious shift of the risk of the status of each loan sold onto the seller as the obligated party. *See Resolution Trust Corp. v. Key Financial Services, Inc.*, 280 F.3d 12, 18 (1st Cir. 2002). This means that after Defendant sells a loan that breaches the Seller Contract, Defendant bears the risk of any changes in the status of that loan, i.e., the borrower ceasing to make payments, the loan being foreclosed, or the value of the underlying property diminishing. This risk borne by the seller is doubly cemented when it refuses to provide the contract remedy of repurchase, leaving the purchaser to attempt to mitigate on its own, as is the case here. *See Navarro v. Perron*, 19 Cal.Rptr.3d 198, 201 (Cal.App. 2004) ("[i]t does not lie in the mouth of the wrongdoer to demand that his victim be limited to that cause of action which is most beneficial to the wrongdoer."). In the instant case, as to both of the loans at issue, Washington Mutual demanded the repurchase remedy the Seller Contract expressly requires, but Defendant refused, such that Washington Mutual mitigated to reduce its losses, and is now entitled, pursuant to the Seller Contract's express indemnity provision, to obtain a judgment on the remaining loss amount, plus its attorney's fees.

VII.    CALIFORNIA LAW REQUIRES THE ENFORCEMENT OF CONTRACTS

Recognizing and enforcing the plain English repurchase and indemnity remedies that Washington Mutual and Defendant expressly agreed to is consistent with the fundamental precepts of the law that governs here. Freedom of contract is a bedrock principle of commercial law. *See, e.g., Foley v. Interactive Data Corp.*, 765 P.2d 373, 384, 386 (Cal. 1988). California courts do not rewrite contracts at the invitation of defaulting parties who, when faced with payment obligations, no longer find their agreement palatable. *See Frankel v. Board of Dental*

1   *Examiners*, 54 Cal.Rptr.2d 128, 134 (Cal.App. 1996) (courts cannot rewrite contracts or make

2   better agreements for parties than they themselves have been satisfied to enter into).  Rather, the

3   clear language of a contract governs its interpretation.  *See A.B.S. Clothing Collection, Inc. v.*

4   *Home Ins. Co.*, 41 Cal.Rptr.2d 166, 176 (Cal.App. 1995) (courts are obliged to enforce

5   agreements according to their terms).  The modern trend of California law is to favor the

6   enforcement of contracts, and to lean against their unenforceability because of alleged

7   uncertainty or subjective perceived inequities.  *Denver D. Darling, Inc. v. Controlled*

8   *Environments Construction, Inc.*, 108 Cal.Rptr. 2d 213, 224 (Cal.App. 2001).  At bottom, if the

9   parties have concluded a transaction in which it appears they intended to make a contract, a court

10  should not frustrate their intention.  *Id.*

11  VIII.  <u>WHY THE DEFENDANT'S DEFENSES ARE UNAVAILING</u>

12      A.    <u>Defendant's Conclusory Defenses Are No Bar To Summary Judgment</u>

13          Defendant's Answer raises thirteen affirmative defenses, in seriatim.[2]  Each defense is, at

14  the outset, conclusory, unexplained and unsupported.  This glaring deficiency in pleading alone

15  is enough to warrant ignoring these defenses for the purpose of this motion.  The Ninth Circuit

16  has held that a conclusory statement of fact asserted as an affirmative defense is not enough to

17  deny summary judgment.  *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989).  Indeed,

18  one of the principal purposes of Rule 56 is to dispose of factually unsupported claims or

19  defenses.  *Celotex*, 477 U.S. at 325.  Part of the underlying rationale for this is that the Federal

20  Rules require parties pleading under them to provide adequate factual and legal bases for

21  defenses.  *See Cohen v. Murphy*, 222 F.R.D. 416, 418 (N.D. Cal. 2004).  Defenses that are

22  facially insufficient, or exist as "barebones conclusory" allegations are in fact properly stricken,

23  once brought to a court's attention.  *See United States v. Hempfling*, 2007 WL 1299262 *4, Case

24  No. CV F 05-594 LJO SMS (E.D. Cal. May 1, 2007).  Each of Defendant's affirmative defenses

25  run afoul of this proscription; none of them will prevent the entry of summary judgment in

26  Washington Mutual's favor.

27  _____
    [2]  Defendant's affirmative defenses are set forth without explanation in short paragraphs 30 to 60
28  words in length which, upon closer inspection, are largely composed of makeweight phraseology
    such as "And as for a FIRST and separate affirmative defense," and "Unified Capital is informed
    and believes and on the basis thereof alleges," and "if any there be" (discussing damages).

B.    Each Of Defendant's Affirmative Defenses Are Also Inapplicable

1.    Washington Mutual States A Claim For Relief

Defendant's first defense is the bare contention that the "Amended Complaint…fails to state facts sufficient to constitute a claim for relief as to [Defendant]." In view of the simple and clear nature of Washington Mutual's contract claim, discussed above and matched to the elements of the "breach of contract" action at California law, this defense is inapplicable here.

2.    No Proximate Cause Defense

Defendant's second defense is "proximate cause." Washington Mutual's action sounds in breach of contract. As Washington Mutual has explained, the breach occurred when Washington Mutual made written demands for the repurchase of the two loans at issue, and Defendant refused. It is difficult to imagine how any entity other than Defendant could be the cause of Defendant's refusal, and hence, the breach. No further explanation is required to demonstrate why this defense fails.

3.    No Limitations Bar

Defendant's third defense is the conclusory statement that Washington Mutual's claim is barred by "the applicable statute of limitations." This defense is clearly incorrectly raised here. The parties' Seller Contract was executed in 2005. See Exhibit A to Amended Complaint at Exhibit C, hereto. The applicable California statute of limitations for an action founded on a written contract, found at Cal. Code Civ. P. §337, is four (4) years. In California, "[i]n ordinary tort and contract actions, the statute of limitations…begins to run upon the occurrence of the last element essential to the cause of action." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 187 (Cal. 1971). Because the parties' contract was not executed until 2005, clearly no limitations period could run as to Washington Mutual's claim until 2009 at the earliest. This action was commenced in March of 2007. *See id.* Clearly then, this defense is not well made, and Washington Mutual's claim was brought before the running of the limitations period.

4.    No Laches

Defendant's fourth affirmative defense is an unexplained hauling-up of "laches." The defense of laches demands as a prerequisite "the requirement of unreasonable delay and resulting

1   prejudice." *See Robert F. Kennedy Medical Center v. Department of Health Services*,

2   72 Cal.Rptr. 2d 180, 182 (Cal.App. 1998).  Defendant raises neither of these elements, and

3   indeed, in a situation where Washington Mutual has filed its suit two years prior to the running

4   of the applicable statute of limitations, it is beyond difficult to see how there could be any

5   unreasonable delay present here.  It is Defendant's burden as the proponent of a laches defense to

6   prove delay and to show that it has operated to his injury, and Defendant has not done so.

7   *See Meigs v. Pinkham*, 159 Cal. 104, 111 (Cal. 1910).

8                    5.    No Unclean Hands

9          In its fifth defense, Defendant alleges, without explaining how, that Washington Mutual

10  has unclean hands.  The defense of unclean hands arises from the maxim, "He who comes into

11  Equity must come with clean hands."  *See Kendall-Jackson Winery, Ltd. v. Superior Court*, 90

12  Cal.Rptr.2d 743 (Cal.App. 1999).  It may only be raised against "wrongdoers."  *See Dickson,*

13  *Carlson & Campillo v. Pole*, 99 Cal.Rptr.2d 678 (Cal. App. 2000).  "The misconduct which

14  brings the clean hands doctrine into operation must relate directly to the transaction concerning

15  which the complaint is made, i.e., it must pertain to the very subject matter involved and affect

16  the equitable relations between the litigants."  *Fibreboard Paper Products Corp. v. East Bay*

17  *Union of Machinists*, 39 Cal.Rptr. 64 (Cal. 1964); *see also Mattco Forge, Inc. v. Arthur Young &*

18  *Co.*, 60 Cal.Rptr.2d 750 (Cal. 1997).  Washington Mutual is the injured party here, and is

19  without wrongdoing.  The parties' Seller Contract states that Defendant will repurchase all early

20  payment default loans, Washington Mutual demanded that the Defendant do the same, the

21  Defendant refused, injuring Washington Mutual.  The defense of unclean hands is therefore

22  clearly inapplicable.

23                    6.    No Failure Of Conditions Precedent

24         Washington Mutual's claim is based on a simple and clear contract provision stating that

25  Defendant will, upon demand, repurchase any early payment default loans it sold Washington

26  Mutual.  The Amended Complaint and this motion establish the sale, the fact of the early

27  payment defaults, and the demand for repurchase.  Neither Defendant's conclusory sixth defense

28

1    alleging a failure of condition nor the written contract documents require anything further in the

2    way of a condition.  Thus, there is no support whatsoever for this defense.

3              7.    <u>No Failure To Mitigate</u>

4        Defendant's seventh defense contends that Washington Mutual's claims are barred

5    because it failed to mitigate its damages.   Proving this defense is Defendant's burden.

6    *See Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 277 Cal.Rptr. 40, 51 (Cal.App.

7    1990) (The burden of proving that losses could have been avoided by reasonable effort and

8    expense must always be borne by the party who has broken the contract).  At the outset, it

9    appears that this defense is somewhat derisory, as, under the clear terms of the Seller Contract,

10    Washington Mutual is entitled to demand the repurchase of defective or non-conforming loans,

11    including early payment default loans, and need not take any action to mitigate its losses until

12    that repurchase occurs.

13        This defense is ultimately misguided, however, because as set forth in the Johnson

14    Affidavit, Washington Mutual did act to mitigate its losses Defendant created, by agreeing to the

15    borrower's sale of the real property underlying both loans in lieu of foreclosure.  In doing so,

16    Washington Mutual reduced the dollar amount of the Defendant's liability from the $711,047.26

17    set forth in the Amended Complaint as the repurchase price for the two loans at issue, to

18    $243,229.64.  Therefore, there is no question but that Washington Mutual, although it did not

19    have to, acted to mitigate its losses with respect to the two loans at issue.

20              8.    <u>No Real Party In Interest Defense</u>

21        Defendant's eighth defense is that Defendant is not the real party in interest.   This

22    defense alludes to Cal. Code Civ. P. §367, which provides that "[e]very action must be

23    prosecuted in the name of the real party in interest…"  This is an action over a single contract.

24    There are but two parties to the contract.  Those two parties are the same parties that are now

25    parties to this suit.  The claim here is that the seller of the two loans at issue was required to

26    repurchase them, but failed to.  Defendant is the only party listed in the contract as the seller, and

27    is the only party that ever sold the two loans at issue.  Defendant cannot escape the fact that it,

28

1  and only it, is the real party in interest to this contract claim on the defense side of the equation.

2  This defense is therefore, like the others, entirely inapplicable.

3           9.      No Contributory Or Comparative Negligence Defense

4        Defendant's ninth defense is contributory negligence and "carelessness."  The use of this

5  defense here is creative, insofar as it is widely recognized that principles of comparative fault are

6  no defense to an action for breach of contract.  *See Kransco v. American Empire Surplus Lines*

7  *Ins. Co.*, 2 P.3d 1, 17 (Cal. 2000) (Mosk, J., concurring) ("Actions in contract do not allow an

8  affirmative defense of comparative fault");  *Considine Co, Inc. v. Shadle, Hunt & Hagar*, 232

9  Cal.Rptr. 250, 257 (Cal.App. 1986) (where one party has contracted to perform a particular act,

10  upon breach the injured promise should not face a comparative negligence defense).  This

11  defense, like each of the others, is simply out-of-place, and appears in Defendant's Answer as

12  mere makeweight.

13          10.     No Third-Party Negligence Defense

14        Defendant's tenth defense fails for the same reasons plaguing its ninth defense. Just as

15  principles of contributory or comparative fault are not defenses to an action for a breach of

16  contract, principles or theories of third-party fault are similarly inapposite.

17          11.     No Third-Party Proximate Causation Defense

18        Defendant's eleventh affirmative defense is an unsupported rehash of its second defense.

19  In its second defense, it claims that it was not the proximate cause of Washington Mutual's

20  contract damages. Here, it alleges that some third-party was the proximate cause.  For the same

21  reasons outlines above that cause the second defense to fail, this eleventh defense also does not

22  apply here to Washington Mutual's contract claim.  It belabors the obvious to state that when a

23  contract essentially provides 'If X happens, then Defendant pays Y', and event 'X' transpires,

24  and Defendant thereafter fails to pay money 'Y', Defendant is the only cause and the proximate

25  cause of the contract damages.

26          12.     No Failure Of Consideration

27        Defendant's twelfth defense is failure of consideration.  There can be no dispute that

28  Defendant was paid in full for both of the claim loans when it sold them.  Defendant's

1 | consideration for the sale of the loans was Washington Mutual's money, and Defendant was paid
2 | in full.  Defendant does not explain how any supposed failure of consideration occurred.  As
3 | explained in *City of Los Angeles v. Amwest Sur. Ins. Co.*, 76 Cal.Rptr.2d 903, 905 (Cal.App.
4 | 1998), failure of consideration (like frustration of purpose, and other excuses for nonperformance
5 | of a contract) is an affirmative defense which the defendant must plead and prove.  *See also* 5
6 | Witkin, California Procedure (4th ed.1997), Pleading, § 1018, pp. 469-470.  This defense fails
7 | because Defendant received 100% of the consideration it bargained for, and because it has not
8 | pleaded anything that would meet its burden as the proponent of the defense.

9 | <center>13.    No Commercial Frustration</center>

10 | Defendant's thirteenth and final defense is "commercial frustration."  This defense is also
11 | a bare bones, conclusory defense.  The doctrine of commercial frustration applies only when a
12 | not reasonably foreseeable event arises to destroy the value of the counterperformance owed to
13 | the complaining party.  *See U.S. Roofing, Inc. v. Credit Alliance Corp.*, 279 Cal.Rptr. 533, 543
14 | (Cal.App. 1991).  The Counterperformance owed to Defendant here was the sales price for the
15 | two loans it sold – a price that Washington Mutual paid in full.  No event disturbed that payment
16 | and Defendant received all of the money paid to it when the loans were sold.  This defense is
17 | simply another example of the incongruous arguments Defendant has thrown into the air in an
18 | effort to distract the Court from the material issues of breach and damages.

19 | IX.    <u>ATTORNEY'S FEES, COSTS, AND INTEREST</u>

20 | California law allows Washington Mutual to recover pre-judgment interest in this
21 | diversity action.  *See* Cal. Civ. Code §3287(a); *North Oakland Medical Clinic v. Rogers*,
22 | 76 Cal.Rptr.2d 743 (Cal.App. 1998).  Washington Mutual is also entitled to post-judgment
23 | interest by virtue of 28 U.S.C. §1961(a).  28 U.S.C. §1961(a); *Chapman & Cole v. Itel Container
24 | Int'l B.V.*, 865 F.2d 676, 689 (5th Cir. 1989).  Washington Mutual is therefore entitled to pre-
25 | and post-judgment interest on any judgment resulting from this motion.

26 | The Seller Contract and Seller Guide provide that Washington Mutual shall recover from
27 | Defendant, as part of its repurchase remedy, any reasonable attorney's fees and costs incurred in
28 | enforcing its contract rights.  Washington Mutual therefore requests that this Court's order

1  granting summary final judgment reserve jurisdiction to determine an appropriate fee award in

2  Washington Mutual's favor, and allow Washington Mutual a period of thirty days, or such other

3  time as the Court may fix, to submit evidence of its reasonable attorney's fees and costs of

4  litigation.

5       WHEREFORE, pursuant to Fed. R. Civ. P. Rule 56(c), Plaintiff Washington Mutual

6  Bank prays for the following relief:

7       (1)    Summary Final Judgment against Defendant Unified Capital Group, Inc. dba

8              California Mortgage Group aka California Mortgage Group, Inc., a California

9              corporation, in the amount of $243,229.64, plus pre-judgment and post-judgment

10             interest; and

11      (2)    An Order determining that Washington Mutual has demonstrated an entitlement

12             to the recovery of its actual reasonable attorneys' fees and costs expended in the

13             prosecution of this action, reserving jurisdiction over the question of fees, and

14             directing Washington Mutual to submit evidence of the same within thirty (30)

15             days or such other time as the Court may fix; and

16      (3)    Such other and further relief as the Court may deem just and proper.

17  Dated: _____June 2, 2008_____          WASHINGTON MUTUAL BANK
                                               Office of the General Counsel
18

19

20                                   By:   _____/s/_____
                                           NOEL C. JOHNSON, ESQ.
21
                                           Attorneys for Defendant
22                                         WASHINGTON MUTUAL BANK

23

24

25

26

27

28