# EXHIBIT A

AFFIDAVIT OF JACQUELINE JOHNSON

NOEL C. JOHNSON, ESQ., SBN 175397
OFFICE OF THE GENERAL COUNSEL
201 MISSION STREET, 7th FLOOR
MAIL STOP CSSF112
CHATSWORTH, CALIFORNIA 94105
Telephone: (415) 278-4527
Facsimile: (415) 278-6012

MICHAEL CAVENDISH*
Florida Bar No.:0143774
GUNSTER, YOAKLEY & STEWART, P.A.
225 WATER STREET, SUITE 1750
JACKSONVILLE, FL 32202-5185
Telephone: (904) 350-7171
Facsimile: (904) 350-5955
*Admitted pro hac vice

Attorneys for Plaintiff
WASHINGTON MUTUAL BANK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WASHINGTON MUTUAL BANK, a federal savings bank, as successor at law to Long Beach Mortgage Company, | CASE NO. 07-03055-MMC |
| Plaintiff, | **AFFIDAVIT OF JACQUELINE JOHNSON IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED CAPITAL GROUP, INC., a California corporation dba California Mortgage Group, also known as California Mortgage Group, Inc., | |
| Defendant. | |

## AFFIDAVIT OF JACQUELINE JOHNSON

BEFORE ME, the undersigned authority, personally appeared Jacqueline Johnson, being first duly sworn by me, deposes and says:

1.    I am an employee of the Plaintiff herein, Washington Mutual Bank ("Washington Mutual") and hold the title of Recovery Analyst.

1

2.      In the course and scope of my employment, I research, manage, negotiate, and maintain records of contract claims within Washington Mutual's Repurchase and Recourse Administration Department, the business unit charged with pursuing recourse on defective or non-conforming loans sold to Washington Mutual and its predecessors, and with enforcing Washington Mutual's contract rights against sellers of defective loans.

3.      Washington Mutual is the successor-at-law to Long Beach Mortgage Company ("Long Beach"). The specific circumstances under which this succession occurred are known to me, but are presented in detail by Washington Mutual in connection with its motion for summary judgment in the separate affidavit of William L. Lynch.

4.      All of the facts set forth herein are of my own personal knowledge, or represent corporate knowledge I have obtained and have access to in the course of my employment with Washington Mutual.

5.      Washington Mutual is in the business of servicing residential mortgage loans. Some of these loans in Washington Mutual's servicing portfolio are acquired from other mortgage companies, known in the mortgage industry as "correspondent lenders," who will make new mortgage loans, one at a time, and then turn around and quickly sell them to servicers in exchange for a premium over the balance of the loan. The defendant in this action is such a correspondent lender.

6.      Washington Mutual, like other servicers in the mortgage industry, purchases loans from correspondent lenders like the defendant under a contract. The contract sets forth the characteristics that a loan Washington Mutual will buy must have, and more importantly, the characteristics that it must not have.

7.      On January 20, 2005 Washington Mutual and the defendant entered into a written contract for the purchase and sale of mortgage loans (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Appendix 1.

8.      The Agreement does not itself set forth all of the required and forbidden characteristics for mortgage loans to be sold under it, instead it expressly incorporates by reference the Long Beach Mortgage Seller Guide (the "Seller Guide") and states that the defendant as the seller makes to Washington Mutual all

2

of the representations and warranties as to the individual mortgage loans it is selling that are set forth in the Seller Guide.

9.      The Seller Guide, among other representations and warranties concerning the individual loans sold, represents and warrants that none of the loans sold will suffer what is known as an "early payment default," something Section 604 of the Seller Guide defines as a loan becoming thirty (30) or more days delinquent in the first monthly payment due immediately following the loan's closing date. A true and correct copy of Section 604 of the Seller Guide, the provision defining an early payment default, is attached hereto as Appendix 2.

10.     The representations and warranties in the Seller Guide as are paired with a remedy in the event of their breach. According to the Agreement and the Seller Guide, if the defendant sells a loan that suffers an early payment default, the defendant must, upon demand, repurchase that loan. See Appendix 2 hereto.

11.     And for any defective loan that cannot be repurchased because, for instance, it has been foreclosed upon or sold at a loss after non-payment by the borrower, and after a continuing failure to repurchase by the contractually liable seller, the Agreement provides that the defendant must indemnify Washington Mutual for the loss it suffers on that loan, such as, for example, a post-foreclosure deficiency. See Appendix 1 at para. 5(a). This provision at Section 5(a) of the Agreement explicitly requires the defendant to make Washington Mutual whole for any loss resulting from either a loan defect or a breach of the defendant's obligations under the Agreement, such as a failure to repurchase. See id.

12.     The defendant sold Washington Mutual two (2) loans that were in breach of Defendant's representations and warranties in that these loans suffered an early payment default—the Romero/0698492956 and Romero/0698493095 loans.

13.     For both of these loans, the borrower failed to remit the first monthly payment owed after closing within thirty (30) days following the payment's due date. These payment defaults are recorded by Washington Mutual loan payment histories for both of the two (2) loans at issue here, true and correct copies of which are attached hereto as composite Appendix 3.

3

14.    As to both of these early payment default loans, Washington Mutual discovered the aforementioned defects and made written demands for each such loan to the defendant for the repurchase of these loans. True and correct copies of these written demands are attached hereto as composite Appendix 4.

15.    In each instance, the defendant failed to remit the contractually specified monies, or any monies, for that matter.

16.    Washington Mutual's in-house legal counsel subsequently made a final demand to the defendant for repurchase. True and correct copies of this additional written demand is attached hereto as composite Appendix 5.

17.    The defendant again failed to remit the repurchase monies, or any monies.

18.    In light of the defendant's continuing failure to honor its express contractual obligations, after the initiation of this action, and because the loans themselves were in persistent payment default, Washington Mutual acted to mitigate its damages on the two (2) loans at issue here.

19.    Specifically, as to the two (2) loans at issue, Washington Mutual accepted a short sale, or a sale of the mortgaged property in lieu of foreclosure in light of the borrower's chronic failure to make loan payments, which resulted in a post-sale deficiency, or loss, in the amount of $243,229.64.

20.    Each of the documents described herein and appended to this affidavit:

a.    were produced from the business record archives of Washington Mutual;

b.    were produced by Washington Mutual to its counsel to be used in this action;

c.    were produced as they appear in the regular course of Washington Mutual's business;

d.    are business records document that Washington Mutual regularly keeps in the course of regularly conducted business activities;

e.    are business record documents, the creation and maintenance of which is a regular practice within the scope of Washington Mutual's regularly conducted business activities;

f.    are business records created in the regular course of business by Washington Mutual personnel who have knowledge of Washington Mutual's regularly conducted business activities as they act within the confines of those activities;

4

g.      Were created in the regular course of business, at or near the time when the events they describe occurred;

h.      are documents that I have knowledge of as to the manner in which they were made;

i.      if prints of computer records, were generated from a print of a computer record stored in electronic form in Washington Mutual's computer systems, or computer systems of Washington Mutual's third-party database providers, which computer systems I have knowledge of; and

j.      are authentic, such that none have been altered or modified in any way from their original appearance as Washington Mutual made them.

21.     The Agreement and Seller Guide provide that part of Washington Mutual's remedy is the recovery of attorney's fees it incurs in redressing any breach caused by a defective loan. Washington Mutual has been required to retain the firm of Gunster, Yoakley & Stewart, P.A. to represent it in this dispute, and is obligated to pay those attorneys a reasonable fee for their services, and has incurred costs of suit.

Further affiant sayeth naught.

_Jacqueline Johnson_
JACQUELINE JOHNSON

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this ___ day of April, 2008, by JACQUELINE JOHNSON, who is personally known to me or who has produced _____ as identification.

[ ........Sean Waelde........ ]
Print notary name below signature
Notary Public, State and County
Aforesaid
My Commission Expires:  5-27-10
(NOTARY SEAL)



SEAN WAELDE
MY COMMISSION # DD 538541
EXPIRES: May 27, 2010
Bonded Thru Notary Public Underwriters

5

# APPENDIX 1

TO AFFIDAVIT OF JACQUELINE JOHNSON

Feb-02-05   15:36   From-wamu          9042817946       T-399   P.002/002   F-961

**LONG BEACH MORTGAGE COMPANY**
**CORRESPONDENT DEPARTMENT**

10

Seller Contract

This Agreement made as of _____ Jan 20 _____, 20 05 , by and

between _____ Unified Capital Group DBA California Mortgage Group

a duly organized and validly existing _____ with its principal place of business at

172 Hamilton Ave Suite k San Jose Ca 95125

("Seller") and Long Beach Mortgage Company, Correspondent Department ("Buyer").

**1.**   *Recitals*

Buyer desires to purchase and Seller desires to sell to Buyer certain conventional 1-4 unit residential loans ("Mortgage Loans") together with the servicing rights to the Mortgage Loans on the terms and conditions set forth in this Agreement and in the Correspondent Seller Guide ("the Seller Guide").

**2.**   *Consideration*

Buyer and Seller, in consideration of the terms, conditions, promises and agreements set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agree to the terms of this Agreement.

**3.**   *Seller Guide*

Seller and Buyer agree and understand that the Seller Guide applies to all Mortgage Loans to be purchased and sold under this Agreement. Seller acknowledges that it has received and read the Seller Guide. All provisions of the Seller Guide are incorporated by reference into this Agreement, and shall be binding upon Seller and Buyer. Any reference in the Seller Guide to Correspondent Department or Long Beach Mortgage Company shall be construed to mean Buyer. Specific reference in this Agreement to particular provisions of the Seller Guide and not to other provisions does not mean that those provisions of the Seller Guide not specifically cited in this Agreement are not applicable. All terms used herein shall have the same meaning as the terms have in the Seller Guide, unless the context clearly requires otherwise. Buyer may amend the Seller Guide from time to time upon written notice to Seller. In the event of any conflict between the provisions of this Agreement and the provisions of the Seller Guide, the provisions of this Agreement shall control.

**4.**   *Representations*

Seller hereby makes all representations, warranties and covenants set forth in the Seller Guide and this Agreement with respect to each Mortgage Loan delivered to Buyer pursuant to this Agreement as of the purchase date.

**5.**   *Remedies*

A    Seller shall indemnify and hold Buyer harmless from any claim, loss, cost of damages, including reasonable attorney fees, resulting from: (1) the inaccuracy of any of Seller's representations or warranties in this Agreement, including the representations and warranties set forth in the Seller Guide, or (2) Seller's breach of any of its promises or covenants in this Agreement, including, but not limited to, the covenants contained in the Seller Guide.

B.  In the event Seller breaches any warranty, representation or covenant relating to a Mortgage Loan purchased by Buyer under this Agreement, Seller shall upon Buyer's demand, repurchase the Mortgage Loan for the amount calculated in accordance with the Seller Guide.

C.  The remedies provided for in this Agreement are not exclusive and are in addition to any other remedies which Buyer may have at law or in equity.

6.  *General Provisions*

A.  Buyer's failure to enforce any provision of this Agreement shall not be deemed a waiver of that or any other provision with respect to that or any other transaction with Buyer.

B.  Seller's rights and obligations hereunder shall not be assignable without Buyer's prior written consent. Buyer may sell or assign without restriction its rights under this Agreement or in and to any Mortgage Loan purchased pursuant to this Agreement.

C.  This Agreement shall be construed and governed by the laws of the State of California.

D.  Seller grants Buyer the right of set-off and Buyer may deduct any fees, penalties or other sums owed to Buyer by Seller under the terms of this Agreement from the Purchase Price for Mortgage Loans being purchased by Buyer from Seller pursuant to this Agreement.

E.  The Seller is not authorized to use the corporate name "Correspondent Department", "Long Beach Mortgage Company" or any derivation thereof, or any of the service marks of Correspondent Department, or Long Beach Mortgage Company in any of the Seller's promotional or other materials without the prior written consent of Buyer. As consideration for granting consent, Seller agrees to indemnify Buyer from, and hold it harmless against, any loss, damage or expense, including those incurred in defending any action or proceeding, resulting from Seller's use of such corporate name, trade name or service marks.

F.  At no time shall Seller represent that it is acting as the agent of Buyer. Seller is and shall act as an independent contractor.

G.  All notices to be given under this Agreement shall be mailed first class to the parties' principal place of business to the attention of a person to be designated below by Buyer and Seller.

- Send notices to Seller to the attention of:    Derrick White

- Send notices to Buyer to the attention of:    _____

H.  Buyer may, at it sole discretion, terminate this Agreement with five (5) days written notice to Seller. Buyer will honor its commitment to purchase loans for which written confirmation has been given to Seller prior to termination; provided that all of the terms and conditions contained in this Agreement have been met.

I.  The Seller agrees to maintain the confidentiality of the Seller Guide and all documents and information provided to the Seller by Buyer.

J.  This is the entire agreement between Seller and Buyer and supersedes all discussions and agreements. This Agreement cannot be changed except in writing signed by Buyer and Seller.

Tim Meyer, AVP, Broker Due Diligence
FEB. 1 7 2005

|  | *(Seller)* |  |  | *(Buyer)* |
|---|---|---|---|---|
| Signed: | | | Signed: | |
| Its: | Pres.LA | | Its: | Sr. V.P. |
| Dated: | 1-20-05 | | Dated: | 1/27/05 |

Page 2 of 2

# APPENDIX 2

TO AFFIDAVIT OF JACQUELINE JOHNSON

**Long Beach Mortgage**
Specialty Home Loans
Washington Mutual

Correspondent Lending
Seller Guide

Representations and Warranties

## 604. Repurchase of Mortgage Loans with Early Payment Defaults

If the first Monthly Payment due on the related Mortgage Loan immediately following the applicable Closing Date made by the related Mortgagor is thirty (30) days or more delinquent (or such first Monthly Payment has been made but the payment has been reversed), the Correspondent, at LBMC's option, shall promptly repurchase such Mortgage Loan at the Repurchase Price within five (5) Business Days of receipt of notice from LBMC in accordance with the procedures set forth in Section 603. For purposes of this Section 604, (i) any payment made to the Correspondent as interim Servicer of the related Mortgage Loan that is not received by LBMC within thirty (30) days of the date on which such Monthly Payment was due, shall be deemed to be thirty (30) days or more delinquent, regardless of when received by the Correspondent; and (ii) any payment made by a Person other than the related Mortgagor shall be ignored for purposes of determining whether a Monthly Payment made by the related Mortgagor is thirty (30) days or more delinquent.

U00254

# APPENDIX 3

TO AFFIDAVIT OF JACQUELINE JOHNSON

Case 3:07-cv-03055-MMC   Document 26-2   Filed 06/02/2008   Page 13 of 78

```
SER1  0698492956              CUSTOMER SERVICE   INV Y29/003   04/14/08   13:51:33
HUGO P ROMERO                 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 0C  TYPE CONV. RES.    ARM      MAN I
AURELIANO MORALES             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     IR  8.92500  BR 47    510-265-4264
738 EASTWOOD WAY              HAYWARD CA 94544-0000            C 510-921-1919
            < FUNDS POSTED AS INSTRUCTED                         >: 09/04/07
----~HIST---------------------* LOAN HISTORY *--------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                     TRAN-EFFECTIVE-DATE
   TRAN-AMT    PRINCIPAL    INTEREST    ESCROW    AMOUNT/CD/DESCRIPTION
09-06-07  10-06   132   LATE CHARGE ADJUSTMENT
        0.00         0.00       0.00      0.00    738.63 1 LATE CHARGE
09-06-07  10-06   182   LOAN REMOVED
        0.00    46,696.32       0.00      0.00
                    0.00
09-05-07  00-00   745   CORPORATE ADVANCE ADJUSTMENT
      160.00-       0.00       0.00      0.00    160.00-  MTGR REC CORP ADV BA
09-05-07  00-00   745   CORPORATE ADVANCE ADJUSTMENT
    7,926.06-       0.00       0.00      0.00  7,926.06-  MTGR REC CORP ADV BA
09-05-07  00-00   745   CORPORATE ADVANCE ADJUSTMENT
    8,086.06        0.00       0.00      0.00  8,086.06   NON REC CORP ADV

---* PF2 FOR ADDL MESSAGES *---------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION          LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE             MULTIPLE LOANS PRESENT
```

```
SER1  0698492950          CUSTOMER SERVICE    INV 729/003   04/14/08   13:52:24
HUGO P ROMERO                   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 0C  TYPE CONV. RES.   ARM      MAN I
AURELIANO MORALES               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    IR  8.92500  BR 47   510-265-4264
738 EASTWOOD WAY         HAYWARD CA 94544-0000               C 510-921-1919
            < FUNDS POSTED AS INSTRUCTED                      >: 09/04/07
----~HIST-------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
     TRAN-AMT   PRINCIPAL    INTEREST    ESCROW     AMOUNT/CD/DESCRIPTION
09-04-07  10-06  170  PAYMENT
        65.32-     0.00      0.00      0.00     65.32-* CORPORATE ADVANCE
09-04-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
        65.32      0.00      0.00      0.00     65.32  MTGR REC CORP ADV BA
09-04-07  10-06  170  PAYMENT
       999.99-     0.00      0.00      0.00    999.99-* CORPORATE ADVANCE
09-04-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       999.99      0.00      0.00      0.00    999.99  MTGR REC CORP ADV BA
09-04-07  10-06  170  PAYMENT
       999.99-     0.00      0.00      0.00    999.99-* CORPORATE ADVANCE
09-04-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       999.99      0.00      0.00      0.00    999.99  MTGR REC CORP ADV BA
---* PF2 FOR ADDL MESSAGES *-----------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION        LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE           MULTIPLE LOANS PRESENT
```

```
SER1 0698492956              CUSTOMER SERVICE  INV Y29/003   04/14/08  13:52:24
HUGO P ROMERO                 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 0C  TYPE CONV. RES.    ARM      MAN I
AURELIANO MORALES             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    IR 8.92500  BR 47     510-265-4264
738 EASTWOOD WAY           HAYWARD CA 94544-0000              C 510-921-1919
           < FUNDS POSTED AS INSTRUCTED                       >: 09/04/07
----~HIST---------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                   TRAN-EFFECTIVE-DATE
   TRAN-AMT   PRINCIPAL   INTEREST    ESCROW     AMOUNT/CD/DESCRIPTION
09-04-07  10-06  170  PAYMENT
     999.99-       0.00      0.00      0.00    999.99-* CORPORATE ADVANCE
09-04-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
     999.99        0.00      0.00      0.00    999.99   MTGR REC CORP ADV BA
09-04-07  10-06  168  REPAY OF ESCROW ADVANCE
       0.00        0.00      0.00  4,065.28- 4,065.28   ADVANCE REFUND
09-04-07  10-06  170  PAYMENT
   3,065.29        0.00      0.00  4,065.28    999.99-* CORPORATE ADVANCE
                                      0.00
09-04-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
     999.99        0.00      0.00      0.00    999.99   MTGR REC CORP ADV BA

---* PF2 FOR ADDL MESSAGES *----------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION          LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE             MULTIPLE LOANS PRESENT
```

```
SER1 069839233g6                     CUSTOMER SERVICE   INV 1297003   04/19/08   13:52:24
HUGO P ROMERO                   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 OC  TYPE CONV. RES.     ARM       MAN I
AURELIANO MORALES               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    IR 8.92500  BR 47     510-265-4264
738 EASTWOOD WAY         HAYWARD CA 94544-0000                     C 510-921-1919
          < FUNDS POSTED AS INSTRUCTED                             >: 09/04/07
----~HIST-------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
     TRAN-AMT  PRINCIPAL   INTEREST     ESCROW    AMOUNT/CD/DESCRIPTION
08-20-07  00-00  713  MISCELLANEOUS EXPENSE REPAYMENT
     125.00        0.00       0.00       0.00    125.00   MTGR REC CORP ADV BA
08-13-07  00-00  632  STATUTORY EXPENSES
      39.00        0.00       0.00       0.00     39.00   MTGR REC CORP ADV BA
08-10-07  00-00  633  MISC FORECLOSURE AND BANKRUPTCY EXPENSES
     160.00        0.00       0.00       0.00    160.00   MTGR REC CORP ADV BA
08-07-07  00-00  633  MISC FORECLOSURE AND BANKRUPTCY EXPENSES
     125.00        0.00       0.00       0.00    125.00   MTGR REC CORP ADV BA
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
      15.36        0.00       0.00       0.00     15.36   MTGR REC CORP ADV BA
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
      15.36        0.00       0.00       0.00     15.36   MTGR REC CORP ADV BA
---* PF2 FOR ADDL MESSAGES *---------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION         LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE            MULTIPLE LOANS PRESENT
```

```
SER1  0698492996              CUSTOMER SERVICE  INV 7297003       04/14/08    13:52:24
HUGO P ROMERO                   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 OC  TYPE CONV. RES.    ARM       MAN I
AURELIANO MORALES               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    IR  8.92500  BR 47     510-265-4264
738 EASTWOOD WAY          HAYWARD CA 94544-0000                  C 510-921-1919
                   < FUNDS POSTED AS INSTRUCTED                    >: 09/04/07
----~HIST---------------------* LOAN HISTORY *------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                      TRAN-EFFECTIVE-DATE
    TRAN-AMT    PRINCIPAL    INTEREST    ESCROW    AMOUNT/CD/DESCRIPTION
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       15.36-         0.00        0.00       0.00    15.36-  NON REC CORP ADV
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       15.36-         0.00        0.00       0.00    15.36-  NON REC CORP ADV
07-16-07  10-06  175  PRINCIPAL PAYMENT
    89,303.72  89,303.72        0.00       0.00
               46,696.32
07-16-07  10-06  175  PRINCIPAL PAYMENT
    99,999.99  99,999.99        0.00       0.00
              136,000.04
07-16-07  10-06  175  PRINCIPAL PAYMENT
    99,999.99  99,999.99        0.00       0.00
---* PF2 FOR ADDL MESSAGES *-------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION          LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE             MULTIPLE LOANS PRESENT
```

```
SER1 0698492956              CUSTOMER SERVICE  INV Y29/003   04/14/08   13:52:24
HUGO P ROMERO                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 OC  TYPE CONV. RES.   ARM       MAN I
AURELIANO MORALES            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    IR  8.92500  BR 47     510-265-4264
738 EASTWOOD WAY          HAYWARD CA 94544-0000             C 510-921-1919
            < FUNDS POSTED AS INSTRUCTED                      >: 09/04/07
-----~HIST---------------------* LOAN HISTORY *------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
     TRAN-AMT   PRINCIPAL    INTEREST    ESCROW    AMOUNT/CD/DESCRIPTION
            236,000.03
07-16-07  10-06  175  PRINCIPAL PAYMENT
    99,999.99  99,999.99      0.00       0.00
            336,000.02
07-16-07  10-06  175  PRINCIPAL PAYMENT
    99,999.99  99,999.99      0.00       0.00
            436,000.01
07-16-07  00-00  632  STATUTORY EXPENSES
       782.50       0.00       0.00       0.00    782.50   MTGR REC CORP ADV BA
07-16-07  00-00  632  STATUTORY EXPENSES
       120.00       0.00       0.00       0.00    120.00   MTGR REC CORP ADV BA

---* PF2 FOR ADDL MESSAGES *------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION          LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE             MULTIPLE LOANS PRESENT
```

```
SER1  0698492956                      CUSTOMER SERVICE   INV 729/003      04/14/08   13:52:24
HUGO P ROMERO                         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 OC  TYPE CONV. RES.    ARM        MAN I
AURELIANO MORALES                     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    IR  8.92500  BR 47    510-265-4264
738 EASTWOOD WAY          HAYWARD CA 94544-0000                         C 510-921-1919
             < FUNDS POSTED AS INSTRUCTED                                >: 09/04/07
----~HIST---------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT   DUE-DT   TRAN  TRAN-DESCRIPTION                        TRAN-EFFECTIVE-DATE
   TRAN-AMT    PRINCIPAL    INTEREST    ESCROW    AMOUNT/CD/DESCRIPTION
07-16-07  00-00   632  STATUTORY EXPENSES
      93.10        0.00       0.00      0.00     93.10    MTGR REC CORP ADV BA
07-16-07  00-00   632  STATUTORY EXPENSES
     200.00        0.00       0.00      0.00    200.00    MTGR REC CORP ADV BA
07-05-07  00-00   632  STATUTORY EXPENSES
     105.00        0.00       0.00      0.00    105.00    MTGR REC CORP ADV BA
06-23-07  00-00   632  STATUTORY EXPENSES
       8.00        0.00       0.00      0.00      8.00    MTGR REC CORP ADV BA
06-23-07  00-00   632  STATUTORY EXPENSES
      11.00        0.00       0.00      0.00     11.00    MTGR REC CORP ADV BA
06-08-07  00-00   633  MISC FORECLOSURE AND BANKRUPTCY EXPENSES
     150.00        0.00       0.00      0.00    150.00    MTGR REC CORP ADV BA
---* PF2 FOR ADDL MESSAGES *-------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION              LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE                 MULTIPLE LOANS PRESENT
```

CUSTOMER SERVICE INV 229 003

```
HUGO P ROMERO                  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 OC  TYPE CONV. RES.   ARM        MAN I
AURELIANO MORALES              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    IR 8.92500 BR 47      510-265-4264
738 EASTWOOD WAY          HAYWARD CA 94544-0000                    C 510-921-1919
        < FUNDS POSTED AS INSTRUCTED                              >: 09/04/07
----~HIST---------------------* LOAN HISTORY *--------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
    TRAN-AMT  PRINCIPAL    INTEREST    ESCROW      AMOUNT/CD/DESCRIPTION
06-07-07  00-00  632  STATUTORY EXPENSES
        8.00       0.00       0.00       0.00      8.00   MTGR REC CORP ADV BA
06-07-07  00-00  632  STATUTORY EXPENSES
       95.00       0.00       0.00       0.00     95.00   MTGR REC CORP ADV BA
05-21-07  10-06  161  ESCROW ADVANCE
    2,037.64       0.00       0.00   2,037.64
05-21-07  03-07  326  PENALTY/DUP FEE
      194.33-      0.00       0.00     194.33-              PAYEE =    04001
                                     4,065.28-
05-21-07  03-07  312  TAX DISBURSEMENT
    1,843.31-      0.00       0.00   1,843.31-              PAYEE =    04001
                                     3,870.95-
---* PF2 FOR ADDL MESSAGES *----------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION          LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE             MULTIPLE LOANS PRESENT
```

```
SER1  069G492990        CUSTOMER SERVICE   INV 1297003   04/14/08  13:52:24
HUGO P ROMERO                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 OC  TYPE CONV. RES.   ARM      MAN I
AURELIANO MORALES           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    IR 8.92500  BR 47     510-265-4264
738 EASTWOOD WAY         HAYWARD CA 94544-0000           C 510-921-1919
                < FUNDS POSTED AS INSTRUCTED                  >: 09/04/07
----~HIST---------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                  TRAN-EFFECTIVE-DATE
   TRAN-AMT   PRINCIPAL    INTEREST    ESCROW     AMOUNT/CD/DESCRIPTION
05-02-07  00-00   632  STATUTORY EXPENSES
      35.00       0.00        0.00      0.00      35.00   MTGR REC CORP ADV BA
04-17-07  00-00   632  STATUTORY EXPENSES
     230.00       0.00        0.00      0.00     230.00   MTGR REC CORP ADV BA
04-17-07  00-00   632  STATUTORY EXPENSES
      18.00       0.00        0.00      0.00      18.00   MTGR REC CORP ADV BA
03-13-07  00-00   632  STATUTORY EXPENSES
      44.52       0.00        0.00      0.00      44.52   MTGR REC CORP ADV BA
03-13-07  00-00   632  STATUTORY EXPENSES
     300.00       0.00        0.00      0.00     300.00   MTGR REC CORP ADV BA
03-13-07  00-00   632  STATUTORY EXPENSES
   1,109.94       0.00        0.00      0.00   1,109.94   MTGR REC CORP ADV BA
---* PF2 FOR ADDL MESSAGES *---------------------------------------------
```

**LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY**
**COMPLETED LOSS MITIGATION            LOSS MIT IND = 5 PENDING CLAIM**
**ZERO PRINCIPAL BALANCE               MULTIPLE LOANS PRESENT**

```
SER1  0698492956                CUSTOMER SERVICE   INV 129/003   04/14/08   13:52:24
HUGO P ROMERO                   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 0C  TYPE CONV. RES.    ARM      MAN I
AURELIANO MORALES               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     IR  8.92500  BR 47     510-265-4264
738 EASTWOOD WAY                HAYWARD CA 94544-0000              C 510-921-1919
          < FUNDS POSTED AS INSTRUCTED                             >: 09/04/07
----~HIST----------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                      TRAN-EFFECTIVE-DATE
   TRAN-AMT    PRINCIPAL    INTEREST     ESCROW     AMOUNT/CD/DESCRIPTION
03-09-07  10-06  161  ESCROW ADVANCE
    2,027.64       0.00        0.00  2,027.64
03-09-07  11-06  326  PENALTY/DUP FEE
     184.33-       0.00        0.00   184.33-               PAYEE =    04001
                                    2,027.64-
03-09-07  11-06  312  TAX DISBURSEMENT
   1,843.31-       0.00        0.00 1,843.31-               PAYEE =    04001
                                    1,843.31-
03-02-07  00-00  632  STATUTORY EXPENSES
     120.00        0.00        0.00      0.00      120.00   MTGR REC CORP ADV BA
03-02-07  00-00  632  STATUTORY EXPENSES
      26.00        0.00        0.00      0.00       26.00   MTGR REC CORP ADV BA
---* PF2 FOR ADDL MESSAGES *------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION          LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE             MULTIPLE LOANS PRESENT
```

```
SER1 0698492956 _____          CUSTOMER SERVICE  INV Y297003  04/14/08   13:52:24
HUGO P ROMERO                      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 0C  TYPE CONV. RES.    ARM       MAN I
AURELIANO MORALES                  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    IR  8.92500  BR 47    510-265-4264
738 EASTWOOD WAY          HAYWARD CA 94544-0000                   C 510-921-1919
                 < FUNDS POSTED AS INSTRUCTED                     >: 09/04/07
----~HIST---------------------* LOAN HISTORY *-------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                     TRAN-EFFECTIVE-DATE
  TRAN-AMT   PRINCIPAL    INTEREST    ESCROW     AMOUNT/CD/DESCRIPTION
03-02-07  00-00  632  STATUTORY EXPENSES
     110.00        0.00        0.00     0.00    110.00   MTGR REC CORP ADV BA
03-01-07  00-00  633  MISC FORECLOSURE AND BANKRUPTCY EXPENSES
     100.00        0.00        0.00     0.00    100.00   MTGR REC CORP ADV BA
02-13-07  00-00  633  MISC FORECLOSURE AND BANKRUPTCY EXPENSES
     100.00        0.00        0.00     0.00    100.00   MTGR REC CORP ADV BA
01-16-07  10-06  152  LATE CHARGE ASSESSMENT
       0.00        0.00        0.00     0.00   246.21-1 LATE CHARGE
01-05-07  00-00  633  MISC FORECLOSURE AND BANKRUPTCY EXPENSES
      25.00        0.00        0.00     0.00     25.00   MTGR REC CORP ADV BA
12-18-06  10-06  152  LATE CHARGE ASSESSMENT
       0.00        0.00        0.00     0.00   246.21-1 LATE CHARGE
---* PF2 FOR ADDL MESSAGES *-------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION              LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE                 MULTIPLE LOANS PRESENT
```

```
SER1 0698492956              CUSTOMER SERVICE   INV 129/003    04/14/08   13:52:24
HUGO P ROMERO                    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 0C TYPE CONV. RES.    ARM      MAN I
AURELIANO MORALES                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    IR 8.92500  BR 47    510-265-4264
738 EASTWOOD WAY            HAYWARD CA 94544-0000               C 510-921-1919
                < FUNDS POSTED AS INSTRUCTED                    >: 09/04/07
----~HIST-----------------* END  OF LOAN HISTORY *--------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
    TRAN-AMT    PRINCIPAL    INTEREST    ESCROW        AMOUNT/CD/DESCRIPTION
11-16-06  10-06  152  LATE CHARGE ASSESSMENT
      0.00          0.00        0.00        0.00      246.21-1 LATE CHARGE
08-28-06  10-06  142  LOAN SETUP
      0.00  536,000.00-        0.00        0.00
              536,000.00
```

```
---* PF2 FOR ADDL MESSAGES *-------------------------------------------------
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION             LOSS MIT IND = 5 PENDING CLAIM
ZERO PRINCIPAL BALANCE                MULTIPLE LOANS PRESENT
```

```
SER1  069893307              CUSTOMER SERVICE            04/14/08   13:51:43
HUGO P ROMERO                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 0C  TYPE 2ND-CONV. R          MAN I
AURELIANO MORALES            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    IR 11.45000  BR 47   510-265-4264
738 EASTWOOD WAY        HAYWARD CA 94544-0000                    C 510-921-1919
      < 02/07/2008 CLOSE WK ID# 1979095 / FCL MISCELLANEOU >: 02/07/08
----~HIST---------------------* LOAN HISTORY *------------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
   TRAN-AMT   PRINCIPAL   INTEREST    ESCROW    AMOUNT/CD/DESCRIPTION
11-26-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       30.72-       0.00       0.00       0.00    30.72- MTGR REC CORP ADV BA
11-26-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       30.72        0.00       0.00       0.00    30.72  NON REC CORP ADV
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       15.36        0.00       0.00       0.00    15.36  MTGR REC CORP ADV BA
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       15.36        0.00       0.00       0.00    15.36  MTGR REC CORP ADV BA
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       15.36-       0.00       0.00       0.00, 15.36- NON REC CORP ADV
07-30-07  00-00  745  CORPORATE ADVANCE ADJUSTMENT
       15.36-       0.00       0.00       0.00   15.36- NON REC CORP ADV
---* PF2 FOR ADDL MESSAGES *---------------------------------------------
PRESS PF14 FOR MEMOS
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION            LOSS MIT IND = 5 PENDING CLAIM
```

```
SER1 0698493095                    CUSTOMER SERVICE  INV 129/004   04/14/08   13:51:43
HUGO P ROMERO                        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 OC   TYPE 2ND-CONV. R              MAN I
AURELIANO MORALES                    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      IR 11.45000  BR 47    510-265-4264
738 EASTWOOD WAY           HAYWARD CA 94544-0000                     C 510-921-1919
              < 02/07/2008 CLOSE WK ID# 1979095 / FCL MISCELLANEOU >: 02/07/08
-----~HIST-----------------* END  OF LOAN HISTORY *-------------------(MORE)
PROC-DT  DUE-DT  TRAN  TRAN-DESCRIPTION                    TRAN-EFFECTIVE-DATE
   TRAN-AMT   PRINCIPAL   INTEREST    ESCROW      AMOUNT/CD/DESCRIPTION
01-16-07  10-06  152  LATE CHARGE ASSESSMENT
      0.00        0.00      0.00      0.00       79.31-1 LATE CHARGE
12-18-06  10-06  152  LATE CHARGE ASSESSMENT
      0.00        0.00      0.00      0.00       79.31-1 LATE CHARGE
11-16-06  10-06  152  LATE CHARGE ASSESSMENT
      0.00        0.00      0.00      0.00       79.31-1 LATE CHARGE
08-28-06  10-06  142  LOAN SETUP
      0.00  134,000.00-    0.00      0.00
           134,000.00


---* PF2 FOR ADDL MESSAGES *-------------------------------------------
PRESS PF14 FOR MEMOS
LIFE-OF-LOAN: POTENTIAL RECOURSE TO PRIOR 3RD PARTY
COMPLETED LOSS MITIGATION              LOSS MIT IND = 5 PENDING CLAIM
```

# APPENDIX 4

TO AFFIDAVIT OF JACQUELINE JOHNSON

12/14/2006

**Washington Mutual**
Long Beach Mortgage

CALIFORNIA MORTGAGE GROUP
1723 HAMILTON AVENUE
SAN JOSE          CA          95125

**Re: INITIAL NOTICE OF LOAN ORIGINATION DEFECT    POTENTIAL REPURCHASE**

LOAN NUMBER:          698493095
Borrower Name:        HUGO P ROMERO
Property Address:     738   EASTWOOD WAY
                      HAYWARD          CA          94544

Dear:    DERRICK WHITE

Long Beach Mortgage values its business relationship with you and your company.  As you know, our mutual goal is to produce high quality home loans that meet and exceed industry standards and investor/insurer guidelines.  We are eager to continue working with you and your company towards meeting that goal, and are determined to resolve any issues that may conflict with our combined high standards.

This letter serves as notice of a defect in the above-referenced Mortgage Loan, which requires you to repurchase the loan or make Long Beach Mortgage whole for any losses sustained as a result of the defect. The warranties and representations made by your company with respect to each loan sold to Long Beach are specified in Section 600 of the Long Beach Mortgage Correspondent Lending Seller Guide ("Guide"). The Guide is incorporated into our Correspondent Purchase and Sale Agreement and may be seen found online at www.longbeachmortgage.com.  Specifically, the referenced loan(s) contain breaches of the representations and warranties as set forth in the Guide as a result of an Early Payment Default as defined in Section 604 of the Guide.

Accordingly, Long Beach Mortgage will require you to repurchase the loan and will begin the process to facilitate a repurchase if we do not hear from you within thirty (30) days from the date of this letter.  In order to avoid disruption of your relationship with Long Beach Mortgage, we encourage your prompt response.  Please contact us within 30 days of the date of this letter to discuss your obligation to repurchase the loan or to appeal this decision.  Should you choose to appeal, please include any documentation necessary to support your position.

If this loan has been sold to an investor and we repurchase it from them, you no longer will be able to appeal this demand.  At such time, you will receive a statement setting forth the total repurchase amount due, the due date, and the wiring instructions for your use and convenience.  If we have not received the repurchase funds within ninety (90) days thereafter, we may pursue contractual and legal remedies as stated in both the agreement you executed when you became a Correspondent and the Guide.  Also, please note that in the meantime we will continue to service this loan, including making any applicable collection efforts, loss mitigation, foreclosure, REO marketing and sale, and loan liquidation decisions.  As a result, the asset may be sold and therefore any repurchase demand may be converted to a demand for "make-whole" loss reimbursement at any time.

We look forward to working with you to resolve this matter as efficiently and expeditiously as possible.  If you have any questions, please feel free to contact me or your company's Long Beach Mortgage Account Executive.

Sincerely,

Rhonda K. Klansky
Recourse Specialist III
Contract.Recovery@wamu.net

Attachments:

7301 Baymeadows Way
JAXB2001
Jacksonville, FL 32256



 **WaMu**°

Repurchase & Recovery Admin.
7255 Baymeadows Way
Jacksonville, FL 32256
904.886.1502 fax

02/13/2007

CALIFORNIA MORTGAGE GROUP
1723 HAMILTON AVENUE
SAN JOSE          CA          95125

Re: Second Repurchase Demand and Notice of Intent to Refer to Legal

Dear:   DERRICK WHITE

Washington Mutual Bank ("Washington Mutual"), formerly known as Long Beach Mortgage, via a prior letter, demanded that your company ("Seller") repurchase the loan identified above (the "Mortgage Loan"). Washington Mutual purchased the Mortgage Loan from your company pursuant to a loan purchase and sale agreement between Washington Mutual and Seller (the "Agreement"). The Agreement incorporates by reference the Correspondent Seller Guide (the "Guide"). Washington Mutual tendered this repurchase demand in accordance with Sec. 604 of the Guide, which states in pertinent part:

> If the first Monthly Payment due on the related Mortgage Loan immediately following the applicable Closing Date made by the related Mortgagor is thirty (30) days or more delinquent (or such first Monthly Payment has been made but the payment has been reversed), the [Seller], at [Washington Mutual's] option, shall promptly repurchase such Mortgage Loan at the Repurchase Price within five (5) Business Days of receipt of notice from [Washington Mutual] in accordance with the procedures set forth in Section 603. For purposes of this Section 604, (i) any payment made to the [Seller] as interim Servicer of the related Mortgage Loan that is not received by [Washington Mutual] within thirty (30) days of the date on which such Monthly Payment was due, shall be deemed to be thirty (30) days or more delinquent, regardless of when received by the [Seller]; and (ii) any payment made by a Person other than the related Mortgagor shall be ignored for purposes of determining whether a Monthly Payment made by the related Mortgagor is thirty (30) days or more delinquent.

Regrettably, you have failed to repurchase the Mortgage Loan or otherwise timely respond to the prior demand. As such, this matter has now been referred to the Washington Mutual Recovery Team for resolution and coordination with the Washington Mutual Legal Department as may be necessary to enforce Washington Mutual's rights under the Agreement and Guide.

⌂ Equal Housing Lender

 **WaMu®**

Repurchase & Recovery Admin.
7255 Baymeadows Way
Jacksonville, FL 32256
904.886.1502 fax

In a final effort to resolve this matter and to avoid a costly and protracted dispute, the Recovery Team has been authorized to permit your company to indemnify Washington Mutual for its losses related to the defective Mortgage Loan in lieu of full repurchase. The Mortgage Loan's unpaid principal balance ("UPB") has a reduced defective "scratch and dent" value, resulting in a loss to Washington Mutual. In lieu of repurchase, your company may elect to pay Washington Mutual the discounted price referenced on the attached spreadsheet in exchange for a full release of your company from further liability under the Agreement or Guide for the subject Mortgage Loan. This offer is valid for five (5) days following Seller's receipt of this letter. Failure to adhere to the demands herein will result in suspension of your company from all channels in which it is engaged with Washington Mutual.

Nothing in this letter waives or modifies any rights or remedies Washington Mutual may have under the Agreement, the Guide or applicable law. Washington Mutual will continue to service the Mortgage Loan, if not already liquidated according to investor guidelines. Seller will remain liable for any fees, costs, expenses or losses associated with the servicing.

We look forward to working with you to resolve this matter as efficiently and expeditiously as possible. However, in order to avoid additional liability related to the subject Mortgage Loan, YOU MUST CONTACT THE UNDERSIGNED IMMEDIATELY to arrange for payment in accordance with the offer of compromise set forth above. If you have any further questions or concerns, please feel free to contact me.

Sincerely,

Jacqueline Johnson
Recovery Specialist
Washington Mutual Corporation
7255 Baymeadows Way
Mail Stop JAXA 1090
Jacksonville, Fl 32256
904.886.1511 phone
904.886.1502 fax
jacqueline.johnson@wamu.net

⌂ Equal Housing Lender

| WaMu Loan Number | Broker Code | Lender | Borrower | | Property Address | UPB | S&D Value | Makewhole Amount |
|---|---|---|---|---|---|---|---|---|
| 0698492956 | 60698 | California Mortgage Group | Romero | 738 | EASTWOOD WAY  HAYWARD, CA 94544 | 536000 | 72.499 | $147,405.36 |
| 0698493095 | 60698 | California Mortgage Group | Romero | 738 | EASTWOOD WAY  HAYWARD, CA 94544 | 134000 | 14.4 | $114,704.00 |

# APPENDIX 5

TO AFFIDAVIT OF JACQUELINE JOHNSON



**WaMu**

Repurchase & Recovery Admin.
7255 Baymeadows Way
Jacksonville, FL 32256

904.886.1502 fax

**Laurence Meyerson**
**Assistant General Counsel**
Legal Department
8050 SW 10th Street
Bldg. 4, Suite 1000
Plantation, Florida 33324

February 20, 2007

California Mortgage Group
1723 Hamilton Avenue, Suite K
San Jose, CA 95125

Re:   First Payment Default -- Final Notice of Repurchase Demand and Intent to Pursue
        Legal Recourse

Dear Derrick White:

Please be advised that this matter has been referred to the Washington Mutual
Legal Department for resolution.  We understand that **California Mortgage Group** has failed to
respond to Washington Mutual's prior Repurchase Demands which outlined various breaches of
representations and warranties made by **California Mortgage Group** pursuant to the terms of the
relevant Purchase and Sale Agreement between **California Mortgage Group** and Long Beach
Mortgage (a division of Washington Mutual) and the Long Beach Mortgage Seller Guide
(collectively, the "Contract").  Accordingly, **California Mortgage Group** is in breach of its
obligations under the Contract, and Washington Mutual and/or Long Beach Mortgage intends to
pursue its legal remedies afforded under the Contract and under applicable state or federal law.

If you wish to discuss resolution of this matter short of costly and time-
consuming litigation, please contact Jacqueline Johnson at 904-886-1511 or
jacqueline.johnson@wamu.net.  If we do not hear from you within ten (10) days of your receipt
of this letter, we intend to exercise all rights available under the Contract and/or applicable law,
including but not limited to commencement of litigation.

Thank you in advance for your prompt attention to this important matter.

Yours sincerely,

*Laurence Meyerson*

Laurence Meyerson
First V.P. and Assistant General Counsel

⌂  Equal Housing Lender

# EXHIBIT B

AFFIDAVIT OF WILLIAM L. LYNCH

## AFFIDAVIT OF FACTS
## WASHINGTON MUTUAL BANK, SUCCESSOR IN INTEREST TO
## LONG BEACH MORTGAGE COMPANY.

I, William L. Lynch, having first been duly sworn, hereby make this Affidavit and say that:

1. I am the Secretary of Washington Mutual Bank (the "Company") and, as such, have custody of the corporate records of the Company.

2. I make and execute this Affidavit based upon my personal knowledge of the contents of the corporate records of the Company.

3. The Company and Wilmington Trust Company, a Delaware banking corporation ("Wilmington Trust"), were the sole parties to the Revocable Trust Agreement dated as of June 7, 2006 (the "Trust Agreement") between the Company, as Trustor, the Company, as General Trustee, and Wilmington Trust, as Administrative Trustee (the "Administrative Trustee"), which created a trust hereinafter referred to as the "Trust." A complete and correct copy of the Trust Agreement is attached hereto as Exhibit A. At all times during the existence of the Trust, the Company was the sole beneficiary under the Trust Agreement and of the Trust. The Company and Wilmington Trust, as the sole parties to the Trust Agreement, never amended the Trust Agreement to change the sole beneficiary or to add a beneficiary, or in any other respect. The Company never assigned or otherwise transferred all or any part of its interest as sole beneficiary under the Trust Agreement and of the Trust.

4. The Company owned all the outstanding stock of Long Beach Mortgage Company, a Delaware corporation ("Long Beach"), prior to the conversion of Long Beach into a Delaware limited liability company, of which the Company was the sole member, as described in paragraph 6, below.

5. Long Beach was converted from a Delaware corporation into a Delaware limited liability company, Long Beach Mortgage Delaware LLC (the "LLC"), of which the Company was the sole member, on July 1, 2006. A true, correct and complete copy of the Certificate of Formation as filed with the Secretary of State of the State of Delaware on July 1, 2006 is attached hereto as Exhibit B and a true, correct and complete copy of the Certificate of Conversion as filed with the Secretary of State of the State of Delaware on July 1, 2006 is attached hereto as Exhibit C. As a result of the conversion, the LLC became the successor in interest to Long Beach by operation of law.

6. Following the conversion of Long Beach into the LLC, the LLC was merged into the Trust. A true, correct and complete copy of the Certificate of Merger merging the LLC into the Trust as filed with the Secretary of State of the State of Delaware on July 1, 2006 is attached hereto as Exhibit D. As a result of the merger, the Trust became the successor in interest to the LLC by operation of law.

7.  After the LLC was merged into the Trust, the Administrative Trustee resigned pursuant to the Notice of Resignation effective at 3:03 A.M. EDT on July 1, 2006 (the "Resignation").  A true, correct and complete copy of the Resignation is attached hereto as Exhibit E.  Upon the effectiveness of the Resignation, there was no distinction between the beneficiary and the sole remaining trustee of the Trust and therefore the Company, as sole beneficiary and sole trustee, became the successor in interest to the Trust by operation of law.

8.  As a result of the transactions described above, the Company is the ultimate successor in interest to Long Beach, the LLC and the Trust by operation of law.

Executed this 3rd day of July, 2006.

The Company has not adopted
any form of Corporate Seal.

By: _____
William L. Lynch, individually
and as Secretary of Washington
Mutual Bank

STATE OF WASHINGTON  )

) SS.

COUNTY OF KING  )

I certify that I know or have satisfactory evidence that William L. Lynch is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Secretary of Washington Mutual Bank to be the free and voluntary act of such party for the uses and purposes mentioned therein.

Dated this 3rd day of July, 2006.

_____
Chriselda M. Landon
Notary Public in and for the State of
Washington, residing in Seattle
My commission expires: February 26, 2007

524773

Notary Public
State of Washington
CHRISELDA LANDON
My Appointment Expires Feb 26, 2007

06/30/2006 5:17 PM

**Exhibit A**

### AFFIDAVIT OF FACTS
### WASHINGTON MUTUAL BANK, SUCCESSOR IN INTEREST TO
### LONG BEACH MORTGAGE COMPANY.

I, William L. Lynch, having first been duly sworn, hereby make this Affidavit and say that:

1. I am the Secretary of Washington Mutual Bank (the "Company") and, as such, have custody of the corporate records of the Company.

2. I make and execute this Affidavit based upon my personal knowledge of the contents of the corporate records of the Company.

3. The Company and Wilmington Trust Company, a Delaware banking corporation ("Wilmington Trust"), were the sole parties to the Revocable Trust Agreement dated as of June 7, 2006 (the "Trust Agreement") between the Company, as Trustor, the Company, as General Trustee, and Wilmington Trust, as Administrative Trustee (the "Administrative Trustee"), which created a trust hereinafter referred to as the "Trust." A complete and correct copy of the Trust Agreement is attached hereto as Exhibit A. At all times during the existence of the Trust, the Company was the sole beneficiary under the Trust Agreement and of the Trust. The Company and Wilmington Trust, as the sole parties to the Trust Agreement, never amended the Trust Agreement to change the sole beneficiary or to add a beneficiary, or in any other respect. The Company never assigned or otherwise transferred all or any part of its interest as sole beneficiary under the Trust Agreement and of the Trust.

4. The Company owned all the outstanding stock of Long Beach Mortgage Company, a Delaware corporation ("Long Beach"), prior to the conversion of Long Beach into a Delaware limited liability company, of which the Company was the sole member, as described in paragraph 6, below.

5. Long Beach was converted from a Delaware corporation into a Delaware limited liability company, Long Beach Mortgage Delaware LLC (the "LLC"), of which the Company was the sole member, on July 1, 2006. A true, correct and complete copy of the Certificate of Formation as filed with the Secretary of State of the State of Delaware on July 1, 2006 is attached hereto as Exhibit B and a true, correct and complete copy of the Certificate of Conversion as filed with the Secretary of State of the State of Delaware on July 1, 2006 is attached hereto as Exhibit C. As a result of the conversion, the LLC became the successor in interest to Long Beach by operation of law.

6. Following the conversion of Long Beach into the LLC, the LLC was merged into the Trust. A true, correct and complete copy of the Certificate of Merger merging the LLC into the Trust as filed with the Secretary of State of the State of Delaware on July 1, 2006 is attached hereto as Exhibit D. As a result of the merger, the Trust became the successor in interest to the LLC by operation of law.

7.  After the LLC was merged into the Trust, the Administrative Trustee resigned pursuant to the Notice of Resignation effective at 3:03 A.M. EDT on July 1, 2006 (the "Resignation").  A true, correct and complete copy of the Resignation is attached hereto as <u>Exhibit E</u>.  Upon the effectiveness of the Resignation, there was no distinction between the beneficiary and the sole remaining trustee of the Trust and therefore the Company, as sole beneficiary and sole trustee, became the successor in interest to the Trust by operation of law.

8.  As a result of the transactions described above, the Company is the ultimate successor in interest to Long Beach, the LLC and the Trust by operation of law.

Executed this 3rd day of July, 2006.

The Company has not adopted any form of Corporate Seal.

By: _____
William L. Lynch, individually
and as Secretary of Washington
Mutual Bank

STATE OF WASHINGTON  )
                                              ) SS.
COUNTY OF KING  )

I certify that I know or have satisfactory evidence that William L. Lynch is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Secretary of Washington Mutual Bank to be the free and voluntary act of such party for the uses and purposes mentioned therein.

Dated this 3rd day of July, 2006.

_____
Chriselda M. Landon
Notary Public in and for the State of
Washington, residing in Seattle
My commission expires: February 26, ~~007~~ 2007

Notary Public
State of Washington
CHRISELDA LANDON
My Appointment Expires Feb 26, 2007

524773

137503 v1

06/30/2006 5:17 PM

**Exhibit A**

## REVOCABLE TRUST AGREEMENT

REVOCABLE TRUST AGREEMENT, dated as of this 7th day of June, 2006, between Washington Mutual Bank, a federal savings association, as "Trustor," and Washington Mutual Bank, as "General Trustee," and Wilmington Trust Company, a Delaware banking corporation, as "Administrative Trustee" (collectively the General Trustee and Administrative Trustee are referred to hereinafter as "Trustees," each a "Trustee").

### Trust Property

I.    Trustor desires to form and Trustees desire to accept a trust hereunder, with Trustor being the sole beneficiary thereof, to be effective as of the date of execution of this agreement by both General Trustee and Administrative Trustee. Certain property described in Schedule A attached hereto is herewith delivered to Trustees. Such property, together with such other property acceptable to Trustees as may hereafter be received and held by Trustees, shall comprise the "trust fund."

### Management

II.    Trustees shall hold and administer the trust fund, collect the income, pay the taxes, charges and expenses properly attributable to the trust and distribute the net income and principal as hereinafter provided:

(A)    From the effective date of this agreement until December 31, 2006 (the "Trust Term"): Trustor shall be sole beneficiary of the trust formed hereunder, and Trustees shall pay to Trustor all of the net income of the trust fund, in convenient installments but not less frequently than annually, and so much of the principal thereof as Trustor may at any time or times request in writing.

(B)     Upon the expiration of the Trust Term, Trustees shall distribute the then remaining principal and income of the trust fund, if any, to Trustor.

Trustee Powers

III.    Trustees shall have all of the powers and authority granted to trustees by Delaware law, including, without limitation, the powers granted under Sections 3324 and 3325 of Title 12 of the Delaware Code.

Trustees

IV.    Other provisions governing Trustees are:

(A)     Appointment of Successor Trustees: In the event of the inability or unwillingness to serve of the initial or any successor General Trustee or Administrative Trustee, Trustor may, but need not, appoint a successor Trustee.

(B)     Resignation: Any Trustee may resign as General Trustee or Administrative Trustee, as applicable, at any time and for any reason by written notice delivered to Trustor. Any such resignation shall be effective as of the future date and time specified in the notice or upon delivery of the notice if no such future effective date and time is specified in the notice whether or not a successor Trustee has been appointed.

(C)     Compensation:    General Trustee shall not be entitled to compensation. Administrative Trustee shall be entitled to compensation as agreed from time to time between Trustor and Administrative Trustee.

(D)     Accountings: Trustees shall be relieved of any obligation to give bond, to provide any surety, or to submit any inventory or account of this trust to any public official or court having jurisdiction over the trust.

- 2 -

(E)    <u>Special Liability Provision</u>:    Neither General Trustee nor Administrative Trustee shall incur any liability by reason of any error of judgment, mistake of law, or action of any kind taken or omitted to be taken in connection with the administration of the trust, except for a matter involving such Trustee's own willful misconduct, proven by clear and convincing evidence in the court then having primary jurisdiction over the trust.    General Trustee, Administrative Trustee and each former General Trustee and former Administrative Trustee shall be fully indemnified by the Trustor and the trust fund against (1) any claim or demand by any person having an interest in the trust, trust creditor or third party arising on account of, or in connection with, any action taken or omitted to be taken in connection with the administration of the trust formed hereunder, except for any claim or demand based on that General Trustee's or Administrative Trustee's own willful misconduct proven by clear an convincing evidence in the court then having primary jurisdiction over the trust, and (2) any cost or expense (including reasonable attorney fees) incurred by General Trustee or Administrative Trustee in connection with any claim or demand for which General Trustee or Administrative Trustee is entitled to indemnification hereunder.    Such right of indemnification shall survive the termination of the trust.    In no event shall General Trustee or Administrative Trustee be liable for any matter with respect to which it is not authorized to participate hereunder or for any act or action occurring before it first became a General Trustee or Administrative Trustee hereunder.

(F)    <u>Administrative Trustee</u>:    Notwithstanding any other provisions of this agreement, Administrative Trustee shall have no duties or obligations hereunder except to the extent described in this Paragraph and General Trustee acting alone shall perform all of those Trustee duties and exercise all of those Trustee powers not specifically assigned to Administrative Trustee pursuant to this Paragraph.    Administrative Trustee shall have no implied

- 3 -

duties and shall have only the following exclusive duties, which shall all be carried out in the State of Delaware and shall be performed by Administrative Trustee in its sole discretion and not at the direction of General Trustee:

      (1)     To maintain bank accounts, brokerage accounts and other custody accounts which receive trust income and contributions and from which trust expenditures and distributions are disbursed.

      (2)     To maintain storage of tangible personalty and evidence of intangible trust property.

      (3)     To maintain trust records.

      (4)     To maintain an office for Trustee meetings and other trust business.

      (5)     To originate, facilitate and review trust accountings, reports and other communications with Trustor, General Trustee, beneficiaries and unrelated third parties.

      (6)     To respond to written inquiries concerning the trust formed hereunder from Trustor, General Trustee, beneficiaries and unrelated third parties.

      (7)     To execute documents with respect to trust account transactions.

      (8)     To retain accountants, attorneys, investment counsel, agents and other advisers in connection with the performance of Administrative Trustee's duties.

      Administrative Trustee shall have no other duties, obligations, or authority and General Trustee shall perform all of the other duties of Trustee and need not obtain the consent

of, consult with, or otherwise advise, Administrative Trustee prior to exercising its powers or performing its duties under this agreement. General Trustee may remove Administrative Trustee at any time without cause and need not appoint a successor Administrative Trustee.

Miscellaneous Terms

V.     The other provisions governing this agreement are:

(A)     Third Party Responsibility:  No one dealing with Trustees need verify the application of any money paid or property delivered to Trustees, inquire into the necessity or propriety of Trustees' exercise of any of the powers herein conferred, or determine the existence of any fact upon which Trustees' power to perform any act hereunder may be conditioned.

(B)     Revocation:  Trustor shall at all times have the right by an instrument in writing, executed and delivered to Trustees, to amend or terminate this agreement, either in whole or in part, although an amendment shall not substantially change the duties, powers, liabilities and compensation of Trustees without their consent, and Trustees shall be paid their expenses in delivering any property with reference to which the agreement is terminated.

(C)     Construction and Controlling Law:  This is a Delaware agreement and forms a Delaware trust. All matters pertaining to the validity, construction, and application of this agreement or to the administration of the trust formed by it shall be governed by Delaware law.

(D)     Merger:  In the event Administrative Trustee is removed or resigns and Trustor becomes, in addition to being the sole beneficiary, the sole Trustee of the trust hereunder, Trustor intends that the legal title and beneficial ownership in the trust fund shall thereupon merge in Trustor by operation of law.

- 5 -

IN WITNESS WHEREOF, the parties have hereunto set their hands.

WASHINGTON MUTUAL BANK, Trustor

By: _____
    Name: Fay L. Chapman
    Title:  Senior Executive Vice President


WASHINGTON MUTUAL BANK,
General Trustee

By: _____
    Name: Fay L. Chapman
    Title:  Senior Executive Vice President


WILMINGTON TRUST COMPANY
Administrative Trustee


By: _____
    Name:
    Title:

480806

- 6 -

STATE OF WASHINGTON )
) SS.
COUNTY OF KING )

BE IT REMEMBERED, that on this 7th day of _____, 2006, personally came before me, the Subscriber, a Notary Public in and for the State and County aforesaid, _____, an authorized officer of WASHINGTON MUTUAL BANK, a federal savings association, party to this instrument, known to me personally to be such, and acknowledged that this instrument is the act and deed of said bank.

GIVEN under my Hand and Seal of office, the day and year aforesaid.

Notary Public
State of Washington
CHRISELDA LANDON
My Appointment Expires Feb 26, 2007

_____
Notary Public

CHRISELDA LANDON

IN WITNESS WHEREOF, the parties have hereunto set their hands.

WASHINGTON MUTUAL BANK, Trustor

By: _____

WASHINGTON MUTUAL BANK,
General Trustee

By: _____

WILMINGTON TRUST COMPANY
Administrative Trustee

By: _____
    Name:
    Title:    Janel R. Havrilla
              Senior Financial Services Officer

480806

- 6 -

STATE OF DELAWARE      )
                              ) SS.

COUNTY OF NEW CASTLE    )

        BE IT REMEMBERED, that on this 7ᵗʰ day of June ____, 2006, personally came before me, the Subscriber, a Notary Public in and for the State and County aforesaid, Janet R Havilla ____, an authorized officer of WILMINGTON TRUST COMPANY, a Delaware banking corporation, party to this instrument, known to me personally to be such, and acknowledged that this instrument is the act and deed of said corporation.

        GIVEN under my Hand and Seal of office, the day and year aforesaid.

                                     Bethany Taylor
                                     Notary Public
                                     Bethany J. Taylor
                                     Notary Public - State of Delaware
                                     My Comm. Expires Oct. 20, 2007

**SCHEDULE A**

Consisting of One Page

Of

Trust Agreement Dated as of June 7, 2006

Between

WASHINGTON MUTUAL BANK, Trustor

And

WASHINGTON MUTUAL BANK, General Trustee

And

WILMINGTON TRUST COMPANY, Administrative Trustee

**Five Dollars ($5.00)**

**Exhibit B**

# Delaware

PAGE 2

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF CERTIFICATE OF FORMATION OF "LONG BEACH MORTGAGE DELAWARE LLC" FILED IN THIS OFFICE ON THE TWENTY-SEVENTH DAY OF JUNE, A.D. 2006, AT 7:50 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF FORMATION IS THE FIRST DAY OF JULY, A.D. 2006, AT 3:01 O'CLOCK A.M.



2608496  8100V

060625014

Harriet Smith Windsor

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 4866554

DATE: 06-29-06

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:59 PM 06/27/2006*
*FILED 07:50 PM 06/27/2006*
*SRV 060618738 - 2608496 FILE*

**CERTIFICATE OF FORMATION**

**OF**

### LONG BEACH MORTGAGE DELAWARE LLC

This Certificate of Formation is being filed pursuant to Section 18-214 of the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq. (the "Delaware LLC Act"), in connection with the conversion of Long Beach Mortgage Company, a Delaware corporation, to a Delaware limited liability company.

The undersigned, being duly authorized to execute and file this Certificate of Formation, does hereby certify as follows:

1.    Name.  The name of the limited liability company is Long Beach Mortgage Delaware LLC (the "Company").

2.    Registered Office and Registered Agent.  The Company's registered office in the State of Delaware is located at 1201 North Market Street, Post Office Box 1347, Wilmington, Delaware 19801.  The registered agent of the Company for service of process at such address is Delaware Corporation Organizers, Inc.

3.    Effective Time.  The effective date and time of this Certificate shall be July 1, 2006, at 3:01 A.M. EDT.

**IN WITNESS WHEREOF**, the undersigned has duly executed this Certificate of Formation as of June 21, 2006.

By: _____
Name: David C. Schneider, President
An Authorized Person

**Exhibit C**

# Delaware

PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF CONVERSION OF A DELAWARE CORPORATION UNDER THE NAME OF "LONG BEACH MORTGAGE COMPANY" TO A DELAWARE LIMITED LIABILITY COMPANY, CHANGING ITS NAME FROM "LONG BEACH MORTGAGE COMPANY" TO "LONG BEACH MORTGAGE DELAWARE LLC", FILED IN THIS OFFICE ON THE TWENTY-SEVENTH DAY OF JUNE, A.D. 2006, AT 7:50 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF CONVERSION IS THE FIRST DAY OF JULY, A.D. 2006, AT 3:01 O'CLOCK A.M.



2608496  8100V

060625014

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 4866554

DATE: 06-29-06

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:59 PM 06/27/2006*
*FILED 07:50 PM 06/27/2006*
*SRV 060618738 - 2608496 FILE*

## CERTIFICATE OF CONVERSION

### CONVERTING

### LONG BEACH MORTGAGE COMPANY
(A Delaware Corporation)

### TO

### LONG BEACH MORTGAGE DELAWARE LLC
(A Delaware Limited Liability Company)

This Certificate of Conversion is being filed for the purpose of converting Long

Beach Mortgage Company, a Delaware corporation (the "Converting Corporation"), to a

Delaware limited liability company to be named "Long Beach Mortgage Delaware LLC" (the

"Company") pursuant to Section 18-214 of the Delaware Limited Liability Company Act, 6 Del.

C. §§18-101 et seq. (the "Delaware LLC Act"), and Section 266 of the General Corporation Law

of the State of Delaware, 8 Del. C. §§ 101 et seq. (the "DGCL").

The undersigned, as an authorized person of the Company, does hereby certify as

follows:

1.    Name of Converting Corporation.    The name of the Converting
Corporation immediately prior to the filing of this Certificate of Conversion was "Long Beach
Mortgage Company." The Converting Corporation was originally incorporated as "Ameriquest
Mortgage Corporation."

2.    Date and Jurisdiction of Organization of Converting Corporation.    The
date on which, and the jurisdiction where, the Converting Corporation was incorporated, which
jurisdiction has not changed, are as follows:

| Date | Jurisdiction |
|------|-------------|
| April 11, 1996 | Delaware |

3.    Name of Converted Limited Liability Company.    The name of the
Delaware limited liability company to which the Converting Corporation is being converted and
the name set forth in the Certificate of Formation of the Company filed in accordance with
Section 18-214(b) of the Delaware LLC Act is "Long Beach Mortgage Delaware LLC."

4.    Effective Time.    The effective date and time of this Certificate shall be
July 1, 2006, at 3:01 A.M. EDT.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Conversion as of June 21, 2006.

LONG BEACH MORTGAGE DELAWARE LLC

By: _____

Name:  David C. Schneider, President
An Authorized Person

**Exhibit D**

# Delaware

PAGE 1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"LONG BEACH MORTGAGE DELAWARE LLC", A DELAWARE LIMITED LIABILITY COMPANY,

WITH AND INTO "TRUST U/A DATED AS OF JUNE 7, 2006, BETWEEN WASHINGTON MUTUAL BANK, AS SETTLOR, AND WILMINGTON TRUST COMPANY" UNDER THE NAME OF "TRUST U/A DATED AS OF JUNE 7, 2006, BETWEEN WASHINGTON MUTUAL BANK, AS SETTLOR, AND WILMINGTON TRUST COMPANY", A COMMON LAW TRUST ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-SEVENTH DAY OF JUNE, A.D. 2006, AT 7:59 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF JULY, A.D. 2006, AT 3:02 O'CLOCK A.M.



2608496  8100M

060625133

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 4867111

DATE: 06-29-06

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 07:59 PM 06/27/2006*
*FILED 07:59 PM 06/27/2006*
*SRV 060618742 - 2608496 FILE*

# CERTIFICATE OF MERGER
## MERGING
## LONG BEACH MORTGAGE DELAWARE LLC
### INTO
### TRUST U/A DATED AS OF JUNE 7, 2006, BETWEEN WASHINGTON MUTUAL BANK, AS SETTLOR, AND WILMINGTON TRUST COMPANY AND WASHINGTON MUTUAL BANK, AS CO-TRUSTEES

The Trust u/a dated as of June 7, 2006, between Washington Mutual Bank, as settlor, and Wilmington Trust Company and Washington Mutual Bank, as co-trustees, a Delaware common law trust (the "common law trust"), DOES HEREBY CERTIFY THAT:

FIRST: The name and jurisdiction of formation of each of the constituent entities in the merger are as follows:

| Name | Jurisdiction of Formation |
| --- | --- |
| Long Beach Mortgage Delaware LLC | Delaware |
| Trust u/a dated as of June 7, 2006, between Washington Mutual Bank, as settlor, and Wilmington Trust Company and Washington Mutual Bank, as co-trustees | Delaware |

SECOND: An Agreement and Plan of Merger between the parties to the merger has been approved and executed by each of the constituent entities in accordance with the requirements of Section 18-209 of the Delaware Limited Liability Company Act and any other applicable Delaware law.

THIRD: The name of the surviving common law trust is Trust u/a dated as of June 7, 2006, between Washington Mutual Bank, as settlor, and Wilmington Trust Company and Washington Mutual Bank, as co-trustees.

FOURTH: The effective date and time of this Certificate shall be July 1, 2006, at 3:02 A.M. EDT.

FIFTH:  The executed Agreement and Plan of Merger is on file at a place of business of the surviving common law trust.  The address of such place of business is:  1201 Third Avenue, Seattle, Washington 98101.

SIXTH:  A copy of the Agreement and Plan of Merger will be furnished by the surviving common law trust, on request and without cost, to any member of the constituent limited liability company and any person or entity holding an interest the surviving common law trust.

IN WITNESS WHEREOF, the surviving common law trust has caused this Certificate of Merger to be duly executed as of June 21, 2006.

> THE TRUST U/A DATED AS OF JUNE 7, 2006, BETWEEN WASHINGTON MUTUAL BANK, AS SETTLOR, AND WILMINGTON TRUST COMPANY AND WASHINGTON MUTUAL BANK, AS CO-TRUSTEES

> Wilmington Trust Company, not in its individual capacity but solely as Administrative Trustee

> By: _____
> Name: James A. Hanley
> Title: Senior Financial Services Officer

> Washington Mutual Bank, as co-trustee

> By: _____
> Name: Fay L. Chapman
> Title: Senior Executive Vice President

# EXHIBIT C

AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WASHINGTON MUTUAL BANK,
a federal savings bank, as successor
at law to Long Beach Mortgage Company,

        Plaintiff,

            v.

Case No. 3:07-cv-324-J-32-MCR

UNIFIED CAPITAL GROUP, INC.,
dba UNIFIED CAPITAL GROUP,
dba CALIFORNIA MORTGAGE GROUP,
aka CALIFORNIA MORTGAGE GROUP, INC.,
a California corporation,

        Defendant.
_____ /

### AMENDED COMPLAINT

    Plaintiff, WASHINGTON MUTUAL BANK, a federal savings bank, as successor at law to LONG

BEACH MORTGAGE COMPANY ("Washington Mutual"), pursuant to Fed. R. Civ. P. 15(a), hereby

submits this Amended Complaint against Defendant UNIFIED CAPITAL GROUP, INC. dba UNIFIED

CAPITAL GROUP dba CALIFORNIA MORTGAGE GROUP aka CALIFORNIA MORTGAGE GROUP,

INC., a California corporation ("Defendant"), and states:

    1.      Washington Mutual is a federal savings bank having offices at 7301 Baymeadows Way,

Jacksonville, Florida 32256. Washington Mutual is the successor at law to Long Beach Mortgage Company,

a former Delaware corporation having offices at 7301 Baymeadows Way, Jacksonville, Florida 32256, and

in Anaheim, California.

1

2.      Defendant is a California corporation located at 1723 Hamilton, Suite 200, San Jose, CA 95113, and who transacts business using the Internet from www.ucglending.com.

3.      Defendant's Internet presence declares that it makes mortgage loans on real property in all 50 U.S. states, including Florida, and whose Internet presence invites mortgage brokers located in any U.S. state to transact business with it, and whose Internet presence cautions brokers transacting business with it, wherever they may be located, that they may be subject to civil actions initiated by it upon failing to comply with its rules and regulations, and whose Internet presence solicits and invites mortgage brokers and borrowers to submit applications for or apply for mortgage loans on property located within the State of Florida, among other places.

4.      For purposes of jurisdiction and venue, this action was removed from the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.

5.      The events creating the cause of action herein grew out of Defendant's breach of written contract by failing to perform acts required by the contract to be performed in and to this County and State.

6.      Washington Mutual engages in the business of, among other things, servicing sub-prime residential mortgage loans.

7.      Washington Mutual maintains a portfolio of sub-prime residential mortgage loans that it holds at and services from its Jacksonville, Florida office.

8.      Defendant is a company which either on its own or through an agent originates sub-prime residential mortgage loans and sells them in exchange for premiums.

9.      A substantial portion of the loans Washington Mutual acquires for servicing are originated by other banks and mortgage companies acting as "correspondent lenders." Washington Mutual purchases

2

mortgage loans from across the United States from correspondent lenders such as Defendant, in order to package them for resale to institutional investors in the form of securities, while retaining the servicing rights to the securitized loans.

10.    In order for sub-prime mortgage loans to be suitable for sale to these investors, they must meet certain quality requirements, such that Washington Mutual imposes the standards of these investors on the loans it purchases from correspondent lenders such as Defendant.

11.    Prior to the initiation of this action, Washington Mutual and Defendant entered into a written Seller Contract (the "Agreement"), pursuant to which Washington Mutual and Defendant agreed that they would buy and sell loans between themselves, provided that the loans met certain expressly agreed-to quality requirements. A copy of the Agreement is attached hereto as Exhibit A.

12.    Under the Agreement, Defendant represented to Washington Mutual that the loans sold under the Agreement would be good and performing residential mortgage loans, which complied with the quality requirements, terms, and conditions of the Agreement and the Long Beach Mortgage Company Seller's Guide ("Seller Guide"), which Seller Guide is expressly incorporated into and made part of the Agreement. The Seller Guide is too voluminous to attach to this pleading, but copies of it are available to Defendant upon request.

13.    Section 100, Page 8 of the Seller Guide places Defendant on notice that Washington Mutual will be performing its part of the transaction from, among other places, 7301 Baymeadows Way, Jacksonville, Florida 32256.

14.    At Section 604, Page 34 of the Seller Guide, Defendant agreed to repurchase upon demand from Washington Mutual, any "early payment default" loan, which is defined as a loan becoming thirty (30) or more days delinquent in the monthly payment due immediately following the loan's closing date.

3

15.    Defendant sold Washington Mutual 2 loans—the Romero/0698492956 and Romero/0698493095 loans---that each breached Defendant's obligation, representation, and warranty in the Agreement and Seller Guide as to early payment default (the "Loans")..

16.    Defendant breached the Agreement and Seller Guide as to the Loans because after the Loans suffered early payment defaults, Defendant failed and refused to provide Washington Mutual with the expressly required remedy—the repurchase of the Loans.

17.    As of the date of this filing, the unpaid amount owed to Washington Mutual under the express terms of the Agreement and Seller Guide for the Loans, exclusive of attorney's fees, costs, and interest, is $711,047.26.

18.    Washington Mutual made written demands on Defendant to perform under the Agreement and Seller Guide and repurchase the Loan, including but not limited to demands issuing from Jacksonville, Florida, which Defendant has failed and refused to do, damaging Washington Mutual.

19    At all relevant times and continuing to the present, Washington Mutual has performed all the covenants and conditions precedent to Defendant's performance that Washington Mutual was required to do under the Agreement. No further performance by Washington Mutual is required under the Agreement for Washington Mutual to be entitled to demand repurchase of the applicable Loans or the payment of indemnity monies. Washington Mutual stands ready to perform any and all obligations required of it upon Defendant's performance.

20.    In addition to the payment of repurchase or indemnity amounts, Washington Mutual is entitled to interest accruing on the Loans until the first of the month following the month in which payment is made.

4

21.     Part of Washington Mutual's remedy which the parties agreed to is the reimbursement of the attorney's fees, court costs, and legal expenses Washington Mutual incurs in enforcing its repurchase rights.

22.     Washington Mutual has retained the undersigned to protect its interest in this action, and is obligated to pay the undersigned a reasonable fee.

WHEREFORE, Washington Mutual Bank demands and requests relief against Defendant Unified Capital Group, Inc. dba Unified Capital Group, dba California Mortgage Group aka California Mortgage Group, Inc. as follows:

(i)     Judgment in favor of Washington Mutual Bank in  the amount of $711,047.26, or such other amount as is proven at trial or summary disposition; and

(ii)     An award of interest accrued on each loan prior to the date of payment; and

(iii)     An award of attorney's fees, court costs, and legal expenses, incurred in enforcing Washington Mutual's contract rights; and

(iv)     Pre-judgment and post-judgment interest; and

(v)     For such other and further relief as is just and proper.


**Gunster, Yoakley & Stewart, P.A.**

By: _____
          Michael Cavendish
          Florida Bar No. 0143774
          550 Water Street, Suite 941
          Jacksonville, FL 32202
          Phone:  (904) 354-3387
          Fax:      (904) 354-2170
          mcavendish@gunster.com

          Attorneys for Plaintiff
          Washington Mutual Bank

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered to the following via first class U.S. Mail this 30th day of April, 2007:

Gregory B. Allen
Stephen D. Milbrath
Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
255 So. Orange Avenue, Suite 1401
Orlando, FL 32802

Counsel for Defendant

_____
ATTORNEY

# EXHIBIT A

Feb-02-05    15:36    From-wamu                    9042817946              T-399   P.002/002   F-961

## LONG BEACH MORTGAGE COMPANY
### CORRESPONDENT DEPARTMENT

10

Seller Contract

This Agreement made as of _____ Jan 20 _____ , 20 05 , by and _____

between _____ Unified Capital Group DBA California Mortgage Group _____

a duly organized and validly existing _____ with its principal place of business at

172; Hamilton Ave Site K San Jose Ca 95125 _____

("Seller") and Long Beach Mortgage Company, Correspondent Department ("Buyer").

1.    *Recitals*

Buyer desires to purchase and Seller desires to sell to Buyer certain conventional 1-4 unit residential loans ("Mortgage Loans") together with the servicing rights to the Mortgage Loans on the terms and conditions set forth in this Agreement and in the Correspondent Seller Guide ("the Seller Guide").

2.    *Consideration*

Buyer and Seller, in consideration of the terms, conditions, promises and agreements set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agree to the terms of this Agreement.

3.    *Seller Guide*

Seller and Buyer agree and understand that the Seller Guide applies to all Mortgage Loans to be purchased and sold under this Agreement. Seller acknowledges that it has received and read the Seller Guide. All provisions of the Seller Guide are incorporated by reference into this Agreement, and shall be binding upon Seller and Buyer. Any reference in the Seller Guide to Correspondent Department or Long Beach Mortgage Company shall be construed to mean Buyer. Specific reference in this Agreement to particular provisions of the Seller Guide and not to other provisions does not mean that those provisions of the Seller Guide not specifically cited in this Agreement are not applicable. All terms used herein shall have the same meaning as the terms have in the Seller Guide, unless the context clearly requires otherwise. Buyer may amend the Seller Guide from time to time upon written notice to Seller. In the event of any conflict between the provisions of this Agreement and the provisions of the Seller Guide, the provisions of this Agreement shall control.

4.    *Representations*

Seller hereby makes all representations, warranties and covenants set forth in the Seller Guide and this Agreement with respect to each Mortgage Loan delivered to Buyer pursuant to this Agreement as of the purchase date.

5.    *Remedies*

A    Seller shall indemnify and hold Buyer harmless from any claim, loss, cost of damages, including reasonable attorney fees, resulting from: (1) the inaccuracy of any of Seller's representations or warranties in this Agreement, including the representations and warranties set forth in the Seller Guide, or (2) Seller's breach of any of its promises or covenants in this Agreement, including, but not limited to, the covenants contained in the Seller Guide.

B.    In the event Seller breaches any warranty, representation or covenant relating to a Mortgage Loan purchased by Buyer under this Agreement, Seller shall upon Buyer's demand, repurchase the Mortgage Loan for the amount calculated in accordance with the Seller Guide.

C.    The remedies provided for in this Agreement are not exclusive and are in addition to any other remedies which Buyer may have at law or in equity.

6.    **General Provisions**

A.    Buyer's failure to enforce any provision of this Agreement shall not be deemed a waiver of that or any other provision with respect to that or any other transaction with Buyer.

B.    Seller's rights and obligations hereunder shall not be assignable without Buyer's prior written consent. Buyer may sell or assign without restriction its rights under this Agreement or in and to any Mortgage Loan purchased pursuant to this Agreement.

C.    This Agreement shall be construed and governed by the laws of the State of California.

D.    Seller grants Buyer the right of set-off and Buyer may deduct any fees, penalties or other sums owed to Buyer by Seller under the terms of this Agreement from the Purchase Price for Mortgage Loans being purchased by Buyer from Seller pursuant to this Agreement.

E.    The Seller is not authorized to use the corporate name "Correspondent Department", "Long Beach Mortgage Company" or any derivation thereof, or any of the service marks of Correspondent Department, or Long Beach Mortgage Company in any of the Seller's promotional or other materials without the prior written consent of Buyer. As consideration for granting consent, Seller agrees to indemnify Buyer from, and hold it harmless against, any loss, damage or expense, including those incurred in defending any action or proceeding, resulting from Seller's use of such corporate name, trade name or service marks.

F.    At no time shall Seller represent that it is acting as the agent of Buyer. Seller is and shall act as an independent contractor.

G.    All notices to be given under this Agreement shall be mailed first class to the parties' principal place of business to the attention of a person to be designated below by Buyer and Seller.

    •    Send notices to Seller to the attention of:    _Derrick White_____

    •    Send notices to Buyer to the attention of:    _____

H.    Buyer may, at it sole discretion, terminate this Agreement with five (5) days written notice to Seller. Buyer will honor its commitment to purchase loans for which written confirmation has been given to Seller prior to termination; provided that all of the terms and conditions contained in this Agreement have been met.

I.    The Seller agrees to maintain the confidentiality of the Seller Guide and all documents and information provided to the Seller by Buyer.

J.    This is the entire agreement between Seller and Buyer and supersedes all discussions and agreements. This Agreement cannot be changed except in writing signed by Buyer and Seller.

_Tim Meyer, AVP, Broker Due Diligence_

FEB 17 2005

|  |  |
|---|---|
| **(Seller)** | **(Buyer)** |
| Signed: | Signed: |
| Its: Pres. dt | Its: S. V. P. |
| Dated: 1-20-15 | Dated: 1/27/05 |

Page 2 of 2

# EXHIBIT D

ANSWER

1  David W. Lively, Bar No. 83642
   dlively@hopkinscarley.com
2  Dori L. Yob, Bar No. 227364
   dyob@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 S First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:     (408) 286-9800
8  Facsimile:      (408) 998-4790

9  Attorneys for Defendant
   UNITED CAPITAL GROUP, INC.
10
                    UNITED STATES DISTRICT COURT
11
                 NORTHERN DISTRICT OF CALIFORNIA
12

13
   WASHINGTON MUTUAL BANK, a          CASE NO.  07-03055-MMC
14 federal savings bank, as successor at law to
   Long Beach Mortgage Company,        **UNIFIED CAPITAL'S ANSWER TO
15                                      AMENDED COMPLAINT**
                    Plaintiff,
16                                      **[DEMAND FOR JURY TRIAL]**
             v.
17
   UNITED CAPITAL GROUP, INC., a
18 California corporation dba California
   Mortgage Group also known as California
19 Mortgage Group, Inc.,

20                  Defendant.

21       Defendant Unified Capital Group, Inc. (erroneously sued herein as "United Capital Group,

22 Inc.) (hereinafter "Unified Capital" or "Defendant"), by and through its undersigned counsel,

23 answers Plaintiff Washington Mutual Bank's (hereinafter "Plaintiff" or "Washington Mutual")

24 amended complaint as follows (hereinafter the "Amended Complaint"):

25                                  **ANSWER**

26       1.      Answering paragraph 1 of the Amended Complaint, Unified Capital lacks

27 sufficient information or belief to answer the allegations of paragraph 1, and on that basis denies

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

544338.1
UNIFIED CAPITAL'S ANSWER TO AMENDED COMPLAINT
07-03055-MMC

1  each and every allegation of paragraph 1.

2        2.     Answering paragraph 2 of the Amended Complaint, Unified Capital admits that it

3  is a California corporation that does business out of its office at 1723 Hamilton, Suite 200, San

4  Jose, CA, 95113 and that it maintains a website located at www.ucglending.com. Except as

5  admitted, Unified Capital denies each and every allegation of paragraph 2 of the Amended

6  Complaint.

7        3.     Answering paragraph 3 of the Amended Complaint, Unified Capital denies the

8  allegations contained therein.

9        4.     Answering paragraph 4 of the Amended Complaint, Unified Capital admits the

10 allegations contained therein.

11       5.     Answering paragraph 5 of the Amended Complaint, Unified Capital denies the

12 allegations contained therein.

13       6.     Answering paragraph 6 of the Amended Complaint, Unified Capital lacks

14 sufficient information or belief to answer the allegations of paragraph 6, and on that basis denies

15 each and every allegation of paragraph 6.

16       7.     Answering paragraph 7 of the Amended Complaint, Unified Capital lacks

17 sufficient information or belief to answer the allegations of paragraph 7, and on that basis denies

18 each and every allegation of paragraph 7.

19       8.     Answering paragraph 8 of the Amended Complaint, Unified Capital admits it is a

20 residential Mortgage Banker Correspondent that also brokers loans to wholesale lending

21 institutions. Except as admitted, Unified Capital denies each and every allegation of paragraph 8

22 of the Amended Complaint.

23       9.     Answering paragraph 9 of the Amended Complaint, Unified Capital lacks

24 sufficient information or belief to answer the allegations of paragraph 9, and on that basis denies

25 each and every allegation of paragraph 9.

26       10.    Answering paragraph 10 of the Amended Complaint, Unified Capital lacks

27 sufficient information or belief to answer the allegations of paragraph 10, and on that basis denies

28 each and every allegation of paragraph 10.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

544338.1                                                    - 2 -
UNIFIED CAPITAL'S ANSWER TO AMENDED COMPLAINT
07-03055-MMC

1         11.    Answering paragraph 11 of the Amended Complaint, Unified Capital admits that

2  on or about January 20, 2005, Unified Capital entered into a Correspondent Loan Agreement

3  (hereinafter the "Agreement") with Long Beach Mortgage Company whereby Unified Capital

4  agreed to sell residential loans to Long Beach Mortgage pursuant to certain terms and conditions.

5  Except as admitted, Unified Capital denies each and every allegation of paragraph 11 of the

6  Amended Complaint.

7         12.    Answering paragraph 12 of the Amended Complaint, Unified Capital admits that

8  the Agreement incorporated the terms of the Long Beach Mortgage Correspondent Lender Seller

9  Guide (hereinafter the "Seller Guide") which was subsequently sent to Unified Capital in San

10  Jose, California.  Except as admitted, Unified Capital denies each and every allegation of

11  paragraph 12 of the Amended Complaint.

12         13.    Answering paragraph 13 of the Amended Complaint, Unified Capital denies the

13  allegations contained therein.

14         14.    Answering paragraph 14 of the Amended Complaint, Unified Capital admits

15  section 604, page 34 of the Seller Guide states, in part: "If the first Monthly Payment due on the

16  related Mortgage Loan immediately following the applicable Closing Date made by the related

17  Mortgagor is thirty (30) days or more delinquent (or such first Monthly Payment has been made

18  but the payment has been reversed), the Correspondent, at LBMC's option, shall property

19  repurchase such Mortgage Loan at the repurchase Price within five (5) Business Days of receipt

20  of notice from LMBC in accordance with the procedures set forth in Section 603." Except as

21  admitted, Unified Capital denies each and every allegation of paragraph 14 of the Amended

22  Complaint.

23         15.    Answering paragraph 15 of the Amended Complaint, Unified Capital denies the

24  allegations contained therein.

25         16.    Answering paragraph 16 of the Amended Complaint, Unified Capital denies the

26  allegations contained therein.

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

544338.1               - 3 -
UNIFIED CAPITAL'S ANSWER TO AMENDED COMPLAINT
07-03055-MMC

1    17.    Answering paragraph 17 of the Amended Complaint, Unified Capital lacks

2  sufficient information or belief to answer the allegations of paragraph 17, and on that basis denies

3  each and every allegation of paragraph 17.

4    18.    Answering paragraph 18 of the Amended Complaint, Unified Capital denies the

5  allegations contained therein.

6    19.    Answering paragraph 19 of the Amended Complaint, Unified Capital denies the

7  allegations contained therein.

8    20.    Answering paragraph 20 of the Amended Complaint, Unified Capital denies the

9  allegations contained therein.

10    21.    Answering paragraph 21 of the Amended Complaint, Unified Capital denies the

11  allegations contained therein.

12    22.    Answering paragraph 22 of the Amended Complaint, Unified Capital lacks

13  sufficient information or belief to answer the allegations of paragraph 22, and on that basis denies

14  each and every allegation of paragraph 22.

15                              **AFFIRMATIVE DEFENSES**

16    1.    As and for a FIRST and separate Affirmative Defense, Unified Capital alleges that

17  the Amended Complaint fails to state facts sufficient to constitute a claim for relief as to Unified

18  Capital.

19    2.    As and for a SECOND and separate Affirmative Defense, Unified Capital alleges

20  that damages suffered by Plaintiff, if any, were proximately caused by the acts of third parties

21  over whom Unified Capital had no control.

22    3.    As and for a THIRD and separate Affirmative Defense, Unified Capital alleges

23  that each claim pleaded in the Amended Complaint against Unified Capital is barred by the

24  applicable statue of limitations.

25    4.    As and for a FOURTH and separate Affirmative Defense, Unified Capital alleges

26  that Plaintiff has unreasonably and inexcusably delayed in presenting its alleged claims, and such

27  delay caused substantial prejudice to Unified Capital.  Accordingly, each claim against Unified

28  Capital is barred by the doctrine of laches.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

544338.1                              - 4 -

UNIFIED CAPITAL'S ANSWER TO AMENDED COMPLAINT
07-03055-MMC

1    5.    As and for a FIFTH and separate Affirmative Defense, Unified Capital alleges that

2    Plaintiff comes into this Court with unclean hands.

3    6.    As and for a SIXTH and separate Affirmative Defense, Unified Capital alleges that

4    the causes of action alleged in the Amended Complaint are barred, in whole or in part, in that

5    Plaintiff failed to perform certain conditions precedent to any duty of Unified Capital.

6    7.    As and for a SEVENTH and separate Affirmative Defense, Unified Capital alleges

7    that the causes of action alleged in the Amended Complaint are barred, in whole or in part, in that

8    the Plaintiff failed to mitigate the amount of its damages, if any

9    8.    As and for a EIGHTH and separate Affirmative Defense, Unified Capital alleges

10    that the Plaintiff has failed to bring specific claims against the real party in interest, and instead

11    has brought this action against Unified Capital.

12    9.    As and for the NINTH and separate Affirmative Defense, Unified Capital alleges

13    that Plaintiff was careless and negligent in and about the matters referred to in the Amended

14    Complaint, and such carelessness and negligence proximately contributed to and/or was the sole

15    proximate contributing cause of the alleged failure to pay referred to and any resulting damages

16    or injuries, if any there be.

17    10.    As and for the TENTH and separate Affirmative Defense, Unified Capital is

18    informed and believes and upon the basis thereof alleges that the damages or harm, if any,

19    sustained herein was the result of the negligence, strict liability, fault, breach of contract, and/or

20    responsibility of persons, corporations, partnerships, or entities other than Unified Capital,

21    including Plaintiff herein, and the acts, omissions, or liability of such were the sole or partial

22    proximate cause of the alleged damages or harm, if any, claimed in this action.

23    11.    As and for the ELEVENTH and separate Affirmative Defense, Unified Capital

24    alleges that the alleged injuries or damages suffered by Plaintiff, if any there be, were the sole

25    proximate result of the misconduct of parties other than Unified Capital.

26    12.    As and for the TWELFTH and separate Affirmative Defense, Unified Capital

27    alleges that the Amended Complaint, and each cause of action thereof, is barred by a failure

28    and/or lack of consideration, and Plaintiff cannot state a cause of action thereunder.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

544338.1                                                    - 5 -

1      13.    As and for the THIRTEENTH and separate Affirmative Defense,  Unified Capital

2  alleges that performance under the contract, if any, was excused and Plaintiff's claim is barred by

3  the doctrine of commercial frustration in that Unified Capital was not required to perform the

4  contract, if any, under the conditions that existed at the time for performance, if any.

5                                      **PRAYER**

6      WHEREFORE, Unified Capital prays for judgment in its favor as follows:

7      9.    That Washington Mutual take nothing by way of its Amended Complaint;

8      10.    For its attorneys' fees;

9      11.    For costs of suit incurred herein; and

10      12.    For such other and further relief as the court deems proper and just.

11                                   **JURY DEMAND**

12      Defendant hereby demands trial by jury.

13  Dated: September 14, 2007                    HOPKINS & CARLEY
                                                 A Law Corporation
14

15

16                                               By: /s/ David W. Lively
                                                 David W. Lively
17                                               Attorneys for Defendant
                                                 UNITED CAPITAL GROUP, INC.

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

544338.1                                          - 6 -
UNIFIED CAPITAL'S ANSWER TO AMENDED COMPLAINT
07-03055-MMC